**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **CITIZENS FOR RESPONSIBILITY AND** | ) | |
| **ETHICS IN WASHINGTON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 11-0374 (CRC) |
| | ) | |
| **U.S. DEPARTMENT OF JUSTICE,** | **)** | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS

### INTRODUCTION

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") initiated this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, on February 14, 2011, seeking the disclosure of records maintained by defendant Department of Justice ("DOJ") relating to the agency's investigation and prosecution of Paul J. Magliocchetti, the founder and owner of PMA Group, Inc. for false statements, making illegal conduit campaign contributions, making illegal corporate campaign contributions, and other charges.  In a ruling issued from the bench on July 22, 2013, the Court denied DOJ's motion for summary judgment and granted, in pertinent part, CREW's cross-motion for partial summary judgment.  Transcript of Motion ("Tr.") (Dkt. No. 30).  In so doing, the Court rejected the agency's contention it was not even obligated to search for responsive records or make a particularized showing as to its exemption claims, and directed DOJ to conduct a search, "release all material deemed to be nonexempt," and "produce a *Vaughn* Index with respect to all withheld material."  *Id*. at 3.

As a direct result of the Court's ruling in CREW's favor, DOJ identified and released a substantial amount of information concerning its investigation and prosecution of Mr. Magliocchetti.  That information formed the basis for a detailed report produced by CREW and was featured in an article in the *Washington Post*.  The clear nexus between CREW's litigation of this matter and DOJ's disclosure of documents demonstrates CREW's eligibility for an award of attorneys' fees and costs.  Further, CREW submits that it is entitled to an award of fees and costs.

The parties have conferred concerning CREW's claim to be eligible for, and entitled to, an award of fees and costs.  DOJ has represented that it does not intend to challenge CREW's eligibility or entitlement, nor does it challenge the number of hours that CREW claims as having been reasonably expended by counsel for CREW in this litigation and for which compensation is sought by this motion.  As such, the parties have agreed that the only issue that remains to be resolved by the Court is the appropriate hourly rate to be applied to time for which CREW seeks compensation.

## **FACTUAL BACKGROUND**

### A.    **DOJ's Investigation and Prosecution of Paul J. Magliocchetti**

On August 5, 2010, DOJ and the U.S. Attorney's Office for the Eastern District of Virginia issued identical press releases announcing the arrest of Mr. Magliocchetti, identified as the founder and president of PMA Group, Inc., for making illegal campaign contributions and false statements to a federal agency.  Exhibit 7 (attached to Declaration of Kristin L. Ellis ("Ellis Decl.")) (Dkt. No. 13-2).  Specifically, the government alleged that from 2005 through 2008, Mr. Magliocchetti used members of his family, friends, and PMA lobbyists to make $386,250 in illegal federal campaign contributions, and that he acted to conceal from the Federal Election

Commission the fact that he and his company were the true sources of the funds for those illegal

contributions.  Exhibit 10 (attached to Ellis Decl.) (Indictment in *U.S. v. Magliocchetti*, Crim. No.

10-cr-286, E.D. VA, August 4, 2010); Exhibit 12 (attached to Ellis Decl.) (Statement of Facts in

*U.S. v. Magliocchetti*, Crim. No. 10-cr-286, E.D. VA, September 24, 2010), ¶¶ 5-6.

On September 24, 2010, Mr. Magliocchetti and DOJ entered into a plea agreement in

which Mr. Magliocchetti agreed to plead guilty to making false statements, making illegal

conduit campaign contributions, and making illegal corporate campaign contributions.  Exhibit

11 (attached to Ellis Decl.) (Plea Agreement in *U.S. v. Magliocchetti*, Crim. No. 10-cr-286, E.D.

VA, September 24, 2010).  On January 7, 2011, DOJ issued a press release announcing that Mr.

Magliocchetti was sentenced to 27 months in prison for his offenses, and detailing his illegal

activities.  Exhibit 8 (attached to Ellis Decl.).

### B.    CREW's FOIA Requests

By letters dated September 27, 2010, to DOJ's components the Criminal Division

("CRM"), Executive Office of U.S. Attorneys ("EOUSA") and Office of Information Policy

("OIP"), CREW requested under the FOIA the following agency records:

> [A]ll records . . . pertaining to the investigation and prosecution of Paul J.
> Magliocchetti, the founder and owner of PMA Group, Inc., for false statements,
> making illegal conduit campaign contributions, making illegal corporate
> campaign contributions, and any other charges at issue in *United States of*
> *America v. Paul J. Magliocchetti*, Crim. No. 1:10-cr-287 (E.D. Va.).

Exhibit 1 (attached to Ellis Decl.); Exhibit A-1 (attached to Declaration of Vinay J. Jolly ("Jolly

Decl.") (Dkt. No. 13-3)); Exhibit A (attached to Declaration of Vanessa R. Brinkmann

("Brinkmann Decl.") (Dkt. No. 13-1)).

C.      **DOJ's Treatment of CREW's FOIA Requests**[1]

**The Criminal Division**

By letter to CREW dated October 15, 2010, CRM responded to CREW's FOIA request and stated that all records responsive to the request were being withheld in their entirety under Exemption 7(A).  CRM advised plaintiff of its right to appeal that determination to OIP.  Exhibit 3 (attached to Ellis Decl.).  By letter to OIP dated October 28, 2010, CREW appealed the determination of CRM to withhold in their entirety all records responsive to CREW's request.  Exhibit 4 (attached to Ellis Decl.).  OIP had not responded to CREW's appeal at the time this lawsuit was filed.  Subsequent to the filing of this action, CRM abandoned its claims under Exemption 7(A) and instead asserted that all responsive records were being withheld on privacy grounds under Exemptions 6 and 7(C).  Ellis Decl., ¶ 15.

**EOUSA**

By form letter to CREW dated October 5, 2010, EOUSA acknowledged receipt of CREW's FOIA request and indicated that without express authorization and consent of "the third party" – presumably Mr. Magliocchetti – any release of information to CREW would violate the Privacy Act.  EOUSA further asserted that the requested records are exempt from disclosure under the FOIA on privacy grounds.  EOUSA advised CREW of its right to appeal that determination to OIP.  Exhibit B-1 (attached to Jolly Decl.).  By letter to OIP dated October 12, 2010, CREW appealed the determination of EOUSA to withhold in their entirety all records responsive to CREW's request.  Exhibit C-1 (attached to Jolly Decl.).  By letter to CREW dated November 30, 2010, OIP responded to CREW's appeal and advised CREW that OIP was

---

[1]  By letter to CREW dated October 7, 2010, OIP acknowledged receipt of CREW's FOIA request and advised CREW that its request for expedited processing had been granted.  Exhibit B

"affirming, on partly modified grounds, EOUSA's action on your request."  OIP advised CREW

of its right to seek judicial review of OIP's decision.  Exhibit E-1 (attached to Jolly Decl.).

### B.    Proceedings in This Court

CREW initiated this action on February 14, 2011, to challenge DOJ's decision to

"categorically" withhold on privacy grounds all potentially responsive information concerning

the agency's investigation and prosecution of Mr. Magliocchetti.  DOJ moved for summary

judgment on September 16, 2011 (Dkt. No. 13), arguing that all potentially responsive

information was categorically exempt from disclosure on privacy grounds, and that the agency

thus was not even obligated to conduct a search or justify the withholding of particular records.

CREW opposed DOJ's motion and cross-moved for summary judgment on October 18, 2011

(Dkts. Nos. 14&15).

On July 22, 2013, following full briefing by the parties, the Court denied DOJ's motion

for summary judgment and granted CREW's cross-motion for partial summary judgment. Tr. at

3.  The Court found Mr. Magliocchetti had "little, if any, privacy interest" in the information

sought by CREW, *id*. at 8, and that "the public does have a substantial interest" in the requested

records, *id*. at 11.  Accordingly, the Court held that "the categorical denial by the Justice

Department has not been justified and is not appropriate in this case."  *Id*. at 7.  The Court

ordered CRM, FBI, and EOUSA to submit *Vaughn* indices of the withheld documents.  *Id*. at 3.

### C.    DOJ's Disclosure of Records Responsive to CREW's Requests

As a result of the Court's order, CRM released to CREW 283 pages of responsive records,

redacted in part.  The Federal Bureau of Investigation processed 1,251 pages that were referred

to it by CRM, and released to CREW 777 pages (750 pages in part and 27 pages in full).  The

Bureau also processed 77 pages which were referred to it by EOUSA and released 40 pages in

part and 37 pages in full.  Statement of Undisputed Material Facts in Support of Defendants'

Motion for Summary Judgment (Dkt. No. 51-1), ¶¶ 14, 16 & 17.

## ARGUMENT

### I.      The Court Should Apply the Updated *Laffey* Matrix to Determine the Prevailing Market Rates for Legal Services

As noted, the parties agree that an award of attorneys' fees and costs is appropriate in this

case, and DOJ has represented that it does not challenge the number of hours for which CREW

seeks compensation in this motion.  As such, the only issue that remains in dispute is the

appropriate method by which to determine the hourly rates to be applied to counsel's time.  Fee

awards are calculated employing the "usual method of . . . multiply[ing] the hours reasonably

expended in the litigation by a reasonable hourly fee, producing the lodestar amount."  *Judicial*

*Watch, Inc. v. Bureau of Land Mgmt.*, 562 F. Supp.2d 159, 175 (D.D.C. 2008) (internal quotation

and citation omitted).

Plaintiff's attorneys, as public interest lawyers, do not have customary hourly billing rates.

Declaration of David L. Sobel ("Sobel Decl.") and Declaration of Anne L. Weismann

("Weismann Decl.") (filed herewith as Exhibits A & B).  In *Blum v. Stenson*, 465 U.S. 886, 896

(1984), the Supreme Court held that public interest attorneys may be awarded fees according to

the prevailing market rates in the community.  *See also Act Now to Stop War & End Racism*

*Coalition v. District of Columbia*, 286 F.R.D. 145, 149 (D.D.C. 2012) ("The appropriate hourly

rate for public interest legal service organizations and for-profit firms engaged in public interest

work is the prevailing market rate."), quoting *Judicial Watch, Inc. v. Dep't of Commerce*, 384 F.

Supp. 2d 163, 170 (D.D.C. 2005).

To ascertain appropriate rates in this jurisdiction, "use of the broad *Laffey* matrix may be

by default the most accurate evidence of a reasonable hourly rate."  *Northwest Coalition for*

*Alternatives to Pesticides v. EPA*, 421 F. Supp. 2d 123, 129 (D.D.C. 2006).[2]  "Attorneys who do not charge a billing rate, such as those employed with non-profit or public interest groups, may be compensated at the hourly" market rate reflected in the *Laffey* Matrix.  *Bolden v. J & R Inc.*, 135 F. Supp. 2d 177, 179 (D.D.C. 2001); *see also Judicial Watch v. U.S. Dep't of Justice*, 774 F. Supp. 2d 225, 232 (D.D.C. 2011) ("For public-interest . . . lawyers who do not have customary billing rates, courts in this circuit have frequently employed the '*Laffey* Matrix.'").

Since at least 2000, this Court has approved the use of a version of the *Laffey* matrix updated through the application of the legal services component of the Consumer Price Index ("CPI") to bring rates from earlier years in line with current economic realities.  *See Salazar v. District of Columbia ("Salazar I")*, 123 F. Supp. 2d 8, 11-15 (D.D.C. 2000).  While the U.S. Attorney's Office for the District of Columbia maintains its own version of the fee matrix, this Court reiterated in 2011 that it "still believes that use of the National Legal Services CPI 'has the distinct advantage of capturing the more relevant data because it is based on the legal services component of the Consumer Price Index rather than the general CPI on which the U.S. Attorney's Office matrix is based.'"  *Salazar v. District of Columbia ("Salazar II")*, 750 F. Supp. 2d 70, 73 (D.D.C. 2011), quoting *Salazar I*, 123 F. Supp. 2d at 14-15.  *See also Smith v. District of Columbia*, 466 F. Supp. 2d 151, 156 (D.D.C. 2006) ("The Court concludes that the use of the updated *Laffey* Matrix is reasonable and consistent with previous precedent from our Court of Appeals, as well as from this Court in *Salazar [I]*."); *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 726 F.3d 403, 414-416 (3d Cir. 2013) (affirming district court's "use of the LSI-updated *Laffey* Matrix to determine the prevailing rates in the Washington, D.C. market.").

---

[2] "The *Laffey* matrix is 'a schedule of charges based on [particular attorneys'] years of experience' developed in *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C. 1983)." *Judicial Watch, Inc. v. Bureau of Land Mgmt.*, 562 F. Supp. 2d at 175.

One year ago, in *Eley v. District of Columbia*, 999 F. Supp. 2d 137 (D.D.C. 2013), the Court conducted a lengthy and detailed analysis of the appropriate methodology with which to determine "prevailing market rates" for attorney fee awards. After surveying relevant data from a variety of sources, and considering some judicial critiques of the Legal Services Index ("LSI") component of the CPI as a means of determining market rates, the Court concluded that "the LSI-adjusted matrix is probably a *conservative* estimate of the actual cost of legal services in this area, but at the very least it appears to be a more accurate reflection of the cost of legal services both in this community and nationwide" than the matrix maintained by the U.S. Attorney's office. *Id*. at 154 (emphasis in original). The Court thus held that "the LSI-adjusted rates are an appropriate measure of the prevailing community rates for attorneys in the Washington, D.C. area." *Id*. at 156.

More recently, in January 2014, the Court addressed the issue again in the *Salazar* litigation, noting that it had previously ruled on several occasions that "the methodology under which the *Laffey* rates should be updated is properly measured by the Legal Services Index ("LSI") of the Nationwide Consumer Price Index ("CPI"), rather than by the All-Items CPI for the Washington, D.C. area" (as the USAO matrix is calculated). *Salazar v. District of Columbia*, 991 F. Supp. 2d 39, 47 (D.D.C. 2014) (*"Salazar III"*). The Court reiterated that it "remains convinced that this methodology is appropriate." *Id*. In so doing, the Court noted that "[i]n an extremely thorough and well-researched opinion issued recently [in *Eley*] . . . this Court cited data further supporting this conclusion." *Id*. As the Court noted in its recent *Salazar* opinion, the extensive analysis in *Eley*

> point[ed] out that, "considering that Washington, D.C. is among the most expensive legal services markets in the country, . . . it would appear that the use of a nationwide legal service index is, if anything, likely to underestimate the costs of local legal services because such a rate is an average of all costs nationwide. In

> short, the LSI-adjusted matrix is probably a *conservative* estimate of the actual cost of legal services in this area, but at the very least it appears to be a more accurate reflection of the cost of legal services both in this community and nationwide."

*Salazar III*, 991 F. Supp. 2d at 48, quoting *Eley*, 999 F. Supp. 2d at 154 (emphasis in original; other citation omitted).

In an opinion issued in August 2014, the Court again reiterated the propriety of the LSI methodology and use of the enhanced *Laffey* rates, applying them to FOIA litigation quite similar to this case. *Citizens for Ethics and Responsibility in Washington v. Dep't of Justice*, No. 11-754 (GK), Mem. Op. (August 4, 2014) ("*CREW I*") (filed herewith as Exhibit C). The court noted that it "has concluded over a period of at least 14 years that the methodology which is based on the Legal Services Index of the CPI is far more accurate and pinpointed than USAO's methodology which is based on the All Items CPI for the Washington, D.C. area." *Id*. at 9-10. Again citing *Eley*, the Court concluded that it "continues to believe that the LSI Methodology is a more accurate and reliable indicator of prevailing market rates in this area and, therefore, applies that methodology to the present case." *Id*. at 10-11.

Most recently, in an opinion issued on October 24, 2014, the Court again reiterated the propriety of the LSI methodology in FOIA cases, citing the "thoughtful and thorough opinion" in *Eley*. *Citizens for Ethics and Responsibility in Washington v. Dep't of Justice*, No. 11-1021 (JEB), Mem. Op. (October 24, 2014) ("*CREW II*") (filed herewith as Exhibit D), at 16. The Court held that the LSI-derived rates were appropriate in the FOIA case before it, finding that the "LSI Matrix stands on sound methodological footing, that it is appropriate in a case of this

complexity, and that it captures the relevant rates regardless of the size or nature of the entity seeking fees." *Id*. at 18.[3]

CREW here relies upon a recently updated *Laffey* matrix calculated by Dr. Michael Kavanaugh, the expert economist whose analytical method the Court adopted in *Salazar I – III*, *Eley* and *CREW I & II*. *See, e.g.*, *Salazar II*, 750 F. Supp. 2d at 73 ("Dr. Kavanaugh's explanation makes good sense …"); *Eley*, 999 F. Supp. 2d at 150 (court relied upon updated *Laffey* matrix "'developed by an expert economist,'" Michael Kavanaugh, Ph.D."). As Dr. Kavanaugh explains in his declaration, his current calculations of prevailing market rates for legal services in the Washington, DC area are based upon the same methodology he employed, and the Court adopted, in *Salazar I*. Declaration of Michael Kavanaugh ("Kavanaugh Decl.") (filed herewith as Exhibit E) ¶ 12. Based upon that methodology, Dr. Kavanaugh has calculated that the prevailing market rates for work performed by attorneys with more than 20 years of experience (like Mr. Sobel and Ms. Weismann)[4] were $709/hour between June 2010 and May 2011; $734/hour between June 2011 and May 2012; $753/hour between June 2012 and May 2013; and $771/hour between June 2013 and May 2014. *Id.*, Attachment 3, "Adjusted *Laffey* Matrix." Notably, these rates are consistent with the findings of a survey conducted by the *National Law Journal* in 2012, which reported on rates for partners in four large Washington,

---

[3]  To the extent that DOJ intends to argue that enhanced *Laffey* rates may not be applied in this case, it would be barred from doing so, in light of the Court's decisions on the issue in *CREW I & II*. *See U.S. Postal Serv. v. Am. Postal Workers Union*, 553 F.3d 686, 696 (D.C. Cir. 2009) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.")

[4] Both Mr. Sobel and Ms. Weismann have been practicing law for over 30 years. Sobel Decl. ¶ 2; Weismann Decl. ¶ 2. They both have extensive experience litigating FOIA cases in the federal courts and have been recognized as leading experts in the field. Sobel Decl. ¶ 3; Weismann Decl. ¶ 3.

DC law firms, with "high" reported rates ranging from $1,250 to $985 per hour, and "median" rates ranging from $750 to $560 per hour.  National Law Journal, "A Nationwide Sampling of Law Firm Billing Rates" (filed herewith as Exhibit F).[5]

Applying those rates to the hours detailed in the declarations of counsel, CREW is entitled to an award of attorneys' fees based upon a lodestar amount of $32,846 as follows:

| Attorney | 6/1/10 - 5/31/11 | 6/1/11 - 5/31/12 | 6/1/12 - 5/31/13 | 6/1/13 - 5/31/14 |
|---|---|---|---|---|
| David Sobel | 6.2x709=4,395 | 23.0x734=16,882 | 6.0x753=4,518 | 2.7x771=2,081 |
| Anne Weismann | 0.5x709=354 | 2.65x734=1,945 | 1.5x753=1,129 | 2.0x771=1,542 |

Sobel Decl., ¶ 4; Weismann Decl., ¶ 4.

In addition, CREW seeks compensation for 4.5 hours of time devoted to the preparation of this motion, *see* Sobel Decl., ¶ 5; Weismann Decl., ¶ 5, in the amount of $3,469.[6]

As detailed above, CREW seeks a total award of attorneys' fees in the amount of $36,315 for time reasonably expended by counsel in litigating the merits of this case and in the preparation of this motion.[7]  In addition, CREW seeks reimbursement of costs reasonably incurred in the amount of $350, for the filing fee CREW paid to the Court upon the initiation of this action.  Sobel Decl., ¶ 6.

## Conclusion

For the foregoing reasons, the Court should grant this motion and order defendant DOJ to pay CREW attorneys' fees in the amount of $36,315 and costs in the amount of $350.

---

[5] In *Salazar I*, the Court considered several such surveys, including one conducted by the *National Law Journal* in 1998, and concluded that their results were "generally consistent with and corroborative of the rates" calculated by Dr. Kavanaugh and adopted by the Court.  123 F. Supp.2d at 14.

[6]  Given that the proffered declaration of Dr. Kavanaugh establishes adjusted *Laffey* rates only up through May 2014, CREW seeks those rates for work performed on this motion.

[7]  CREW intends to supplement its request for attorney's fees to account for additional time spent in the preparation of its reply in support of this motion.

Respectfully submitted,


 */s/ David L. Sobel*
DAVID L. SOBEL, D.C. Bar No. 360418
5335 Wisconsin Avenue, N.W.
Suite 640
Washington, DC 20015
(202) 246-6180

ANNE L. WEISMANN, D.C. Bar No. 298190
MELANIE SLOAN, D.C. Bar No. 434584
Citizens for Responsibility and
   Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C. 20005
(202) 408-5565

 Counsel for Plaintiff