# EXHIBIT C

Plaintiff's Motion for an Award of Attorneys' Fees and Costs

*Citizens for Ethics and Responsibility in Washington v. Dep't of Justice*,
Civ. No. 11-0374 (CRC)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, : : : Plaintiff, : : v. : : DEPARTMENT OF JUSTICE, : : Defendant. : | Civil Action No. 11-754 (GK) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") filed a Motion for Attorneys' Fees and Costs [Dkt. No. 55], Defendant filed an Opposition [Dkt. No. 57], and Plaintiff filed a Reply [Dkt. No. 58]. Upon consideration of the arguments made by counsel and the applicable case law, the Court concludes that the Motion shall, in large part, be **granted**.

### I. INTRODUCTION

On January 24, 2011, Plaintiff submitted identical FOIA requests to DoJ component agencies, the Federal Bureau of Investigation ("FBI"), the Executive Office for the United States Attorneys ("EOUSA"), and the Criminal Division of DoJ ("CRM"). Each of the three requests sought "all records related to investigations conducted by DoJ and the FBI of Rep. Don Young (R-AK) that are not covered by grand jury secrecy . . . including but not limited to DoJ's decision not to bring criminal charges against him." [Dkt. No. 10-2].

On January 25, 2011, the FBI issued its response to Plaintiff's FOIA request. Id. ¶ 9. The EOUSA responded on February 1, 2011, and the CRM responded after the filing of the present litigation. Without conducting a search for the requested documents, all three entities categorically

denied Plaintiff's request pursuant to FOIA Exemptions 6 and 7(C). Df. Stmt. of Facts, ¶¶ 2, 9; Declaration of Kristin Ellis ("Ellis Decl.") [Dkt.. No. 10-3]. As stated in the FBI's denial:

> You have requested records concerning a third party. . . . Records pertaining to a third party generally cannot be released absent express authorization and consent of the third party, proof that the subject of your request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records. Since you have not furnished a Certificate of Identity form, proof of death, or public justification for release, the release records concerning a third party would result in an unwarranted invasion of personal privacy and would be in violation of the Privacy Act, 5 U.S.C. § 552a. These records are also generally exempt from disclosure pursuant to section (b)(6) and (b)(7)(C) of the Freedom of Information Act, 5 U.S.C. § 552.
>
> If requested, we will conduct a search for any public records maintained in our files, such as court records and news clippings, without express authorization of the third party, proof of death, or public justification for release provided the subject is of sufficient notoriety.

On April 21, 2011, CREW brought this case under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the disclosure of records maintained by the Department of Justice regarding its investigation of alleged bribery and other legal conduct by U.S. Representative Don Young [Dkt. No. 1].

On August 4, 2010, Congressman Young's office had issued a press release stating that the Department of Justice had concluded its investigation and declined prosecution of the Congressman. This investigation, which came to be known as the "Coconut Road Earmark investigation," stemmed from Congressional action in 2008 directing DoJ to investigate the allegations against Rep. Young.

See Safe, Accountable, Flexible, Effective Transportation Equity Act: A Legacy for Users ("SAFETEA-LU") Technical Corrections Act of 2008, Pub. L. 110-244, § 502, 122 Stat. 1572.[1]

In a Memorandum Opinion issued January 10, 2012, the Court denied DoJ's Motion for Summary Judgment and granted Plaintiff's Cross-Motion for Partial Summary Judgment [Dkt. No. 20]. The Court rejected the Defendant's contention that it was not obligated to search for responsive records or make a particularized showing as to its exemption claims and directed DoJ to file Vaughn Indexes describing any withheld responsive records. Id. at 236. Thereafter, DoJ identified and released a substantial amount of information concerning its investigation of Representative Young.

## II.    LEGAL STANDARD FOR GRANTING ATTORNEYS' FEES IN FOIA CASES

To obtain attorneys' fees under FOIA, a plaintiff must satisfy two requirements. First, it must be eligible for fees, thus requiring that it "substantially prevail" as defined by 5 U.S.C. § 552(a)(4)(E)(ii). Second, an eligible plaintiff must then demonstrate that it is entitled to the fees it seeks. See Cotton v. Heyman, 63 F.3d 1115, 1117 (D.C. Cir. 1995). There is no question that Plaintiff has "substantially prevail[ed]" in this case and, is, therefore, eligible for payment of its attorneys' fees.

Our circuit has long applied a multi-factor standard for evaluating whether a plaintiff who is eligible for attorneys' fees is also entitled to its fees. See, e.g., Nationwide Bldg. Maint., Inc. v. Sampson, 559 F.2d 704, 712, 714 (D.C. Cir. 1977). Four non-exclusive factors typically govern the entitlement inquiry: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the

---

[1] See Citizens for Responsibility and Ethics in Washington v. Dep't of Justice, 840 F. Supp. 2d 226, 231-32 (D.D.C. 2012), for a more detailed recitation of the underlying facts.

-3-

agency's withholding" of the requested documents. Tax Analysts v. Dep't of Justice, 965 F.2d 1092, 1093 (D.C. Cir. 1992); see Davy v. CIA, 550 F.3d 1155, 1159 (D.C. Cir. 2008). In practice, the Circuit "has often combined the second and third factors into a single factor assessing whether a plaintiff has 'sufficient private incentive to seek disclosure' of the documents without expecting to be compensated for it." McKinley v. Fed. Housing Finance Agency, 739 F.3d 707, 711 (D.C. Cir. 2014) (quotation and citation omitted).

### A. Public Benefit

The first factor requires consideration of the significance of the contribution that the released information made to the fund of public knowledge. See Cotton, 63 F.3d at 1122. Release of the documents in this case meets that test.

After the documents were released, there was substantial public interest in their contents. The information was widely disseminated, including stories or articles in the Anchorage Daily News, the New York Times, the Alaska Dispatch, New York Magazine, and Associated Press outlets. See Dkt. No. 55, Exhs. A-D. CREW itself produced and published an extensive report discussing the contents of the documents and what it believed they revealed about the Department of Justice's handling of official corruption investigations. Moreover, this report was posted on Plaintiff's web site giving the public access to every page. The disclosures DoJ made, and the media interest which ensued, were directly traceable to the litigation Plaintiff brought in this case.

### B. Commercial Benefit to the Plaintiff and the Nature of Plaintiff's Interest in the Records

As to the second and third factors requiring consideration, the Government concedes that there is no "commercial benefit" to the Plaintiff. See Davy, 550 F.3d at 1159 (quoting Tax

-4-

Analysts, 965 F.2d at 1093). As our Court of Appeals said recently in McKinley, "[t]he second and third factors, considered together, address whether the plaintiff had a 'sufficient privacy incentive' to pursue his FOIA request even without the prospect of obtaining attorneys' fees." McKinley, 739 F.3d at 712 (quoting Davy, 550 F.3d at 1160). There is no record evidence to suggest this was not the case in this instance. In short, the Government does not seriously question that factors two and three justify payment of Plaintiff's fees, and made no challenge to the appropriateness of the nature of the Plaintiff's interest in the records.

## C. Reasonableness of the Government

What is very much in dispute is the fourth and final factor requiring consideration of "whether the agency opposition to disclosure had a reasonable basis in law" and "whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." McKinley, 739 F.3d at 712 (quoting Davy, 550 F.3d at 1162) (internal quotations marks omitted). DoJ argues very strongly that it had a reasonable basis in law for withholding the materials that were ultimately released and, therefore, Plaintiff is not entitled to the full award of the fees it seeks because, at the time the decisions were made, those decisions were reasonable and had a substantial basis in governing law.

Defendant contends that "(a) the agencies had a colorable basis for relying on FOIA Exemption 6 and 7(C) to deny Plaintiff access to the requested materials, based on a balancing of the relevant individual privacy right against the public interest in disclosure and (b) in light of authority from this Circuit, the result of the balancing test, and limited agency resources, the agencies had a reasonable legal basis not to search for the requested law enforcement records." Def.'s Opp'n at 8. Defendant argues that it weighed the relevant individual privacy rights of Congressman Young

-5-

against the public interest in disclosure, and also considered the results of the balancing test and its limited resources.

However, while Defendant is correct that it did cite applicable case law from this circuit to support its position, Def.'s MSJ at 20-21; Def.'s Reply at 16-17, the facts compel a different conclusion than those reached in cases cited by the Government--namely, that the Defendant's decision to withhold the documents -- in the context of this case -- was in fact unreasonable. As this Court held in its Memorandum Opinion on the merits:

> It is difficult to understand how there could not be a substantial public interest in disclosure of documents regarding the manner in which DoJ handled high profile allegations of public corruption about an elected official. Clearly, the American public has a right to know about the manner in which its representatives are conducting themselves and whether the government agency responsible for investigating and, if warranted, prosecuting those representatives for alleged illegal conduct is doing its job.

840 F. Supp. 2d at 234. The Court continued:

> In addition to the widespread public interest in this country at this time in holding its Government accountable, we have the added, and decidedly uncommon fact in this case, that Congress passed a specific piece of legislation . . . directing DoJ to conduct an investigation of all "allegations of impropriety regarding [the Coconut Road earmark] to ascertain if a violation of Federal criminal law has occurred." . . .
>
> Given the fact that Rep. Young was at that time Chair of the House of Representatives Transportation Committee, and given the detailed remarks he made on the floor of the House of Representatives about this matter, there is a substantial public interest in examining the adequacy of DoJ's enforcement of other types of law governing the activities of federal officials, in addition to the explicit direction given by Congress to DoJ to investigate the Coconut Road matter.

Id. at 234-35.

It should be noted that in its opening brief on the merits, DoJ took the position that there was no public interest in the requested records. Memo of P. & A. in Support of Def.'s Mot. for Summ. J. at 11 [Dkt. No. 10]. Despite the fact that DoJ certainly knew that its investigation was mandated by enactment of the highly unusual Congressional legislation, it still persisted in arguing that Plaintiff "fail[ed] to identify any cognizable public interest" and has "no valid public interest to point to." Def.'s Opp'n to Pl.'s Cross-Mot. for Partial Summ. J. and Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Def. SJ Reply") at 1-2 [Dkt. No. 13]. This conclusion was plainly unreasonable. It is particularly hard to take seriously given the fact that, during the period of time in question, Representative Young was Chair of the House of Representative Transportation Committee, and presented detailed remarks on the House floor about the Coconut Road Earmark project.

In short, even though there was relevant case law from our Court of Appeals focusing on the need to protect the privacy of individuals, none of the cases cited by Defendant presented a factual situation where a respected Congressman, Chair of a powerful House of Representatives Committee, was being investigated by the Defendant about allegations of bribery -- at the specific command of Congress.

Although this Court ruled that Representative Young had a cognizable, albeit diminished, privacy interest in the requested documents, it also ruled that "those very important principles of privacy have far less force in this case because the information -- namely, the fact that DoJ conducted an investigation of acts involving Representative Young -- is already a matter of public record." 840 F. Supp. 2d at 233. It was a matter of public record because, back in 2008, when the House of Representatives was considering passage of the bill ordering DoJ to investigate the Coconut Road

-7-

project, Congressman Young spoke on the floor of the House, acknowledging that he had "been the subject of much innuendo concerning [his] intent and motivation of this project [referring to the Coconut Road earmark]." Id. at 233 (citation omitted). In addition, at the time of Plaintiff's request, "Representative Young [had] himself confirmed in a press release issued by his Congressional office that there had been an investigation into his activities[.]" Id. As this Court ruled earlier, "[o]ne can have no privacy interest in information that is already in the public domain, especially when the person asserting his privacy is himself responsible for placing that information into the public domain." Id.[2]

In other words, despite the fact that there was relevant case law regarding the importance of protecting the privacy rights of individuals, DoJ knew at the time of Plaintiff's request that the Congressman had already given up that privacy right by discussing the subject on the floor of the House of Representatives and issuing his own press release that he was not going to be prosecuted. Based on the specific facts of this case, the Court concludes that the decisions made by the Government to withhold the requested documents were not reasonable. Therefore, the Plaintiff is "entitled" to a fee award. Davy, 550 F.3d at 1162.[3]

---

[2] The Government relies on the fact that the Court did not conclude in its earlier Opinion that Defendant's position lacked a reasonable basis in law. Opp'n at 11. However, at that stage of the litigation, there was no need to make such a ruling.

[3] The Court wishes to emphasize that Defendant is not contesting that Plaintiff is eligible for a partial award of fees. Def.'s Opp. at 6.

## III. FEE CALCULATIONS

### A. Hourly Rates

The Government argues that any attorneys' fees paid to Plaintiff should be based upon the U.S. Attorney's Office ("USAO") Laffey Matrix, updated by its Civil Division. Plaintiff, on the other hand, requests compensation for its legal work pursuant to the Laffey Matrix, but updated by application of the Legal Services Index ("LSI") component of the National Consumer Price Index ("CPI").

As Plaintiff has noted, this Court has, for many years, accepted the appropriateness of and greater accuracy of rates based on the LSI Index. See, e.g., Salazar v. District of Columbia ("Salazar I"), 123 F. Supp. 2d 8, 11-15 (D.D.C. 2000); Smith v. District of Columbia, 466 F. Supp. 2d 151, 156 (D.D.C. 2006); Salazar v. District of Columbia ("Salazar II"), 750 F. Supp. 2d 70, 73 (D.D.C. 2011); see also Interfaith Cmty. Org. v. Honeywell, Int'l, Inc., 726 F.3d 403, 414-16 (3d Cir. 2013) (affirming district court's "use of the LSI-updated Laffey Matrix to determine the prevailing rates in the Washington, D.C. market.").

DoJ opposes use of this version of the Laffey Matrix for two reasons: first, that CREW has specifically endorsed use of the lower rates of the USAO Laffey Matrix in recent FOIA attorneys' fee litigation calculating hourly rates for fee awards, and, second, basically, to save money. The fact that Plaintiff chooses to now request that its fees be based on the Laffey Matrix measured by the Legal Services Index of the CPI, has nothing to do with whether its former requests in other cases were justified or not.

This Court has concluded over a period of at least 14 years that the methodology which is based on the Legal Services Index of the CPI is far more accurate and pinpointed than USAO's

methodology which is based on the All Items CPI for the Washington, D.C. area. Most recently, Judge Howell of this District Court wrote an extremely detailed and scholarly opinion demonstrating how much more accurate the Laffey Matrix measured by the LSI is than if measured by the All Items CPI. Eley v. District of Columbia, No. 11-309, 2013 WL 6092502, at *7-*12 (D.D.C. Nov. 20, 2013). Thereafter, this Court issued another opinion in Salazar v. District of Columbia, No. 93-452, 2014 WL 307484, at 7 (D.D.C. Jan. 28, 2014), reiterating that it "remains convinced that this methodology is appropriate." Id. at 8.

As this Court noted in its recent Salazar opinion, the extensive analysis in Eley pointed out that

> [C]onsidering that Washington, D.C. is among the most expensive legal services markets in the country, . . . it would appear that the use of a nationwide legal service index is, if anything, likely to underestimate the costs of local legal services because such a rate is an average of all costs nationwide. In short, the LSI-adjusted matrix is probably a conservative estimate of the actual cost of legal services in this area, but at the very least it appears to be a more accurate reflection of the cost of legal services both in this community and nationwide.

Id. at *2 (quoting Eley, 2013 WL 6092502, at *10) (emphasis in original). The Court has seen no evidence to change its mind. Significantly, DoJ offers no opposition that even attempts to challenge the accuracy of the LSI methodology.[4] The Court continues to believe that the LSI Methodology is

---

[4] Plaintiff points out that DoJ's own expert, Dr. Laura A. Malowane, has given inconsistent opinions concerning the calculation of attorneys' fees in the District of Columbia market. See Briery v. United States, 2012 U.S. Claims LEXIS 1445, at 21 (Fed. Cl. Nov. 27, 2012). In that case before the Court of Federal Claims, Dr. Malowane testified that "the national rates of plaintiffs' attorneys [$705-706 per hour] are in line with market rates." Id. Those hourly rates are also compatible with the rates produced by use of the LSI Methodology.

a more accurate and reliable indicator of prevailing market rates in this area and, therefore, applies that methodology to the present case.

### B. Fees Requested

Plaintiff seeks a total award of attorneys' fees in the amount of $75,165. Of that amount, work on the merits of the litigation covered 67.5 hours, amounting to a request for $56,199; Plaintiff also seeks an award of "Fees on Fees" consisting of 24.6 hours amounting to $18,966; and Plaintiff seeks an award of $1.150 in costs.

The Government argues that Plaintiff's request should be drastically cut to $7,873.60 for its work on the merits of its FOIA request, all fees for "Fees on Fees" should be denied, and fees and expenses should be reduced to $3,386.40 which represents work done after Defendant submitted its Offer of Judgment. The Government also argues, "additionally and alternatively," that there should be a 20 percent discount in Plaintiff's request because it failed to demonstrate that its hours were reasonable, and that it has vastly overbilled. The Court disagrees with both arguments.

First, contrary to the Government's argument, Plaintiff's counsel, Ms. Wisemann, did in fact, as required, maintain contemporaneous time records describing the work she performed. Her Affidavit indicates that she kept daily time sheets and separate notes with specifics of the hours which were devoted to distinct activities, such as drafting the Complaint, drafting and preparing memoranda related to the parties' motions, and reviewing the agency's disclosures to assess compliance with the Court's decision.

In American Petroleum Institute v. EPA, 72 F.3d 907, 916 (D.C. Cir. 1996), our Circuit noted that "[d]eciding what is a reasonable amount of time to spend on motions is an imprecise undertaking[.]" But, the Court pointed out that "[b]ased on the motions filed and [the Court's]

-11-

Case 1:11-cv-00374-CKK Document 59-3 Filed 11/12/14 Page 13 of 15

familiarity with the issues of the case," the reasonableness of time devoted to particular tasks can be assessed. Id. This Court concludes, after examining the documents submitted by Plaintiff detailing the work of the two lawyers who participated in this litigation, that the presentation was sufficiently detailed and clear to overcome Defendant's argument that they were inadequate.[5]

The Government also complains about fees sought for time spent during the administrative stage of this case. Plaintiff billed 3.8 hours which the Court agrees were clearly necessary to determine the degree to which DoJ had complied with the Court's Order concerning preparation of Vaughn Indexes and whether a challenge to the agency's compliance was necessary. Plaintiff determined that no such follow up was called for. The fact that no follow up was made, certainly does not establish that those 3.8 hours should not be compensated.

The Government also asks that Plaintiff be denied any fees for entries in which tasks were grouped together -- a practice usually identified as "block billing." In National Ass'n of Concerned Veterans v. Sec. of Defense, 675 F.2d 1319, 1327 (D.C. Cir. 1982), the Court of Appeals noted that the "better practice is to prepare detailed summaries based on contemporaneous time records indicating the work performed by each attorney for whom fees are sought." Id. Ms. Wisemann's Declaration clearly states that she derived her calculation of hours from a review of her "daily time sheets." Clearly a "daily" time record is a "contemporaneous" one.[6] Therefore, the Court concludes that the grouping of certain tasks was "sufficiently detailed to permit the district court to make an independent determination whether or not the hours claimed are justified."

---

[5] It should be noted that Ms. Wisemann claimed only 8.8 hours of work on the substantive filings and only 1.5 hours on the Fees on Fees petition.

[6] It would appear that the only block billing that the Government is even concerned about relates to the 8.8 hours that Ms. Wisemann worked on the substantive aspects of the case.

-12-

The Government takes a number of pages to argue for various specific reductions, such as 1.2 hours should be reduced by 0.6 hours, that 2.2 hours should be reduced to 1.2 hours, that 2.4 hours should be reduced to 1.4 hours, etc. This is precisely the kind of "nit-picking" which a District Court should avoid countenancing in assessing claims for attorneys' fees. Id. at 1338. In addition, a defendant should not be wasting everyone's time by challenging requests for such ridiculously small amounts of money.

The Government also asks that the Court discount the entire award by at least 20 percent in light of the reasonableness of its initial withholding decision. Given the fact that the Court has already ruled that the Government's withholding decisions in the context of this particular factual situation were not reasonable, no across-the-board reduction of 20 percent in Plaintiff's fee request is justified.

The Government also objects to Plaintiff's request for a "Fees on Fees" award, and asks the Court to deny Plaintiff all fees incurred after Defendant served its Offer of Judgment under Rule 68, including any fees incurred in connection with this Motion. There is no justification for refusing to grant the "Fees on Fees" request, which is commonly granted in this type of litigation. Electronic Privacy Info. Ctr. v. Dep't of Homeland Sec., No. 11-2261, 2013 WL 6047561, at *5 (noting that district courts in this Circuit have granted "fees on fees" in FOIA litigation "without hesitation."). However, the Court does agree with the Government that the 24.6 hours, amounting to $18,966, for completion of the "fees on fees" request by lawyers as experienced as the two lawyers in this case, is somewhat excessive and the Court will reduce that amount by 10 percent.

## IV. CONCLUSION

For all the reasons discussed, the Court concludes that Defendant's conduct in withholding the requested documents was unreasonable, that Plaintiff is entitled to the bulk of the fees it has sought, and that Plaintiff's fee request submissions were sufficiently detailed for this Court to determine whether they were reasonable or not. Consequently, the Court grants Plaintiff's Motion for an Award of Attorneys' Fees and Costs. Parties should submit a final Order consistent with the ruling of the Court.

August 4, 2014

                                                                                                            */s/ Gladys Kessler*
Gladys Kessler
United States District Judge

**Copies via ECF to all counsel of record**