# EXHIBIT D

Plaintiff's Motion for an Award of Attorneys' Fees and Costs

*Citizens for Ethics and Responsibility in Washington v. Dep't of Justice*,
Civ. No. 11-0374 (CRC)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,

      Plaintiff,

      v.

U.S. DEPARTMENT OF JUSTICE,

      Defendant.

Civil Action No. 11-1021 (JEB)

## MEMORANDUM OPINION

In 2011, Citizens for Responsibility and Ethics in Washington (CREW) submitted a
Freedom of Information Act request to several components of the U.S. Department of Justice.
After failing to obtain the documents it had requested, CREW filed suit in this Court, which
ultimately resulted in DOJ's disclosure of thousands of documents it would have otherwise
withheld. CREW now moves for an award of attorney fees and costs expended in that litigation.
Because the Court finds that CREW substantially prevailed in its suit and that the multi-factor
entitlement inquiry favors a fee award – at least for a portion of the underlying litigation – it will
grant Plaintiff's Motion for Attorney Fees and Costs, although in a substantially reduced amount.

**I.      Background**

Past Opinions detail the factual background of this suit, so the Court will note here only
the facts relevant to the pending Motion for Attorney Fees. In January 2011, CREW submitted
FOIA requests to three components of DOJ – the Criminal Division, the FBI, and the Executive
Office of United States Attorneys (EOUSA) – for "all records related to investigation of Rep.
Jerry Lewis." CREW v. Dep't of Justice, 846 F. Supp. 2d 63, 68 (D.D.C. 2012) (CREW I). In

1

response, the agencies claimed that any information that might arise under such a search was categorically exempt from disclosure under FOIA.  See id. at 68-69.  DOJ thus refused to process CREW's request any further, and CREW brought suit in this Court challenging the agency's position.  Litigation then unfolded in three phases.

## A.  CREW I

In the first phase, the parties cross-moved for summary judgment on the issue of whether DOJ could categorically withhold responsive documents pursuant to FOIA Exemptions 6 and 7(C).  Id. at 67.  After "comparing the privacy interests and the public interest at stake in the records at issue," the Court found "that the balance [did] not so characteristically tip in favor of privacy as to justify DOJ's categorical denial."  Id.  The Court noted that the Government might ultimately be entitled to withhold the requested files, but nonetheless concluded that it had to provide a legal basis for withholding each responsive document.  Id.  The Court, therefore, denied Defendant's Motion for Summary Judgment, granted Plaintiff's, and ordered the Government to submit a Vaughn Index detailing its withholdings.  Id. at 75-76.

## B.  CREW II

In response, the Criminal Division produced 166 pages of responsive records, along with a Vaughn Index describing 39 additional documents withheld pursuant to FOIA Exemptions 5, 6, and 7(C).  CREW v. Dep't of Justice, 955 F. Supp. 2d 4, 9 (D.D.C. 2013) (CREW II).  The FBI released thousands of pages concerning its investigation of Rep. Lewis, which CREW then posted online.  See Mot. at 4; Opp. at 5.  For its part, EOUSA determined that there were thousands of responsive documents – several thousand of which it released, and several thousand of which it withheld in whole or in part.  Id. at 9-10.  To explain its withholdings, it provided

CREW with a <u>Vaughn</u> "Glossary," which divided the documents into thirteen categories and justified its withholdings by category. <u>See</u> <u>id.</u>

The parties again cross-moved for summary judgment, with CREW challenging both the withholdings and the sufficiency of the Government's <u>Vaughn</u> Indices. <u>See</u> <u>id.</u> at 10. The Court found the second challenge meritorious, noting that "[a]lthough DOJ's time-consuming efforts" were "impressive," FOIA required more. <u>Id.</u> at 8-9. EOUSA's <u>Vaughn</u> "Glossary" did "not offer a useable point of reference to negotiate [the] thousands of pages of withholdings," the Court concluded, and several of the Criminal Division's explanations were insufficient to determine the propriety of its withholdings. <u>See</u> <u>id.</u> at 15, 18-19. The Court, therefore, again denied Defendant's Motion, granted Plaintiff's Cross-Motion in part, and directed DOJ to "produce additional explanations" for its withholdings. <u>Id.</u> at 9.

C. <u>CREW III</u>

Ordinarily, EOUSA would have to justify its withholdings by providing CREW with a <u>Vaughn</u> Index that "describe[s] <u>each</u> withheld document, state[s] which [FOIA] exemption the agency claims for <u>each</u> withheld document, and explain[s] the exemption's relevance." <u>Johnson v. Exec. Office for U.S. Att'ys</u>, 310 F.3d 771, 774 (D.C. Cir. 2002) (emphases added). Rather than force the Government to individually defend the thousands of withholdings at issue, however, the Court allowed EOUSA to sample four percent of the withheld documents and produce a <u>Vaughn</u> Index for this smaller, representative collection. <u>See</u> Minute Order of Aug. 27, 2013; <u>Bonner v. Dep't of State</u>, 928 F.2d 1148, 1151 (D.C. Cir. 1991) (approving sampling of approximately five percent of withheld documents); <u>Meeropol v. Meese</u>, 790 F.2d 942, 948, 956-57 (D.C. Cir. 1986) (approving sampling of approximately one percent of withheld documents). In November 2013, DOJ produced a representative-sample <u>Vaughn</u> Index to

provide CREW and the Court with the information necessary to determine whether its withholdings were appropriate.  <u>See</u> ECF No. 45-2 (Declaration of Vinay J. Jolly), ¶ 18.

CREW then returned to court, this time arguing that DOJ had improperly withheld documents under Exemptions 5, 6, and 7(C).  <u>See</u> <u>CREW v. Dep't of Justice</u>, No. 11-1021, 2014 WL 2604640 (D.D.C. June 11, 2014) (<u>CREW III</u>).  The Court disagreed.  Finding the withholdings justified and pointing to the "more than two thousand man-hours" the Government had expended in the searches and disclosures, the Court granted summary judgment to Defendant on all counts.  <u>Id.</u> at *1.

## II.   Analysis

CREW now moves for attorney fees and costs associated with all three phases of litigation.  FOIA provides that courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i); <u>see</u> <u>Brayton v. Office of the U.S. Trade Rep.</u>, 641 F.3d 521, 524 (D.C. Cir. 2011).  "This language naturally divides the attorney-fee inquiry into two prongs, which our case law has long described as fee 'eligibility' and fee 'entitlement.'"  <u>Brayton</u>, 641 F.3d at 524 (citing <u>Judicial Watch, Inc. v. Dep't of Commerce</u>, 470 F.3d 363, 368-69 (D.C. Cir. 2006)).  The Court, accordingly, first decides whether CREW has "substantially prevailed" and is therefore "eligible" to receive fees.  <u>See id.</u>; <u>Judicial Watch</u>, 470 F.3d at 368; <u>Negley v. FBI</u>, 818 F. Supp. 2d 69, 73 (D.D.C. Oct. 11, 2011).  If so, the Court must then "consider[] a variety of factors" to determine whether it is "entitled" to fees.  <u>Brayton</u>, 641 F.3d at 524-25; <u>Judicial Watch</u>, 470 F.3d at 369; <u>Davy v. CIA</u>, 550 F.3d 1155, 1158 (D.C. Cir. 2008).  Put another way, the Court will first determine whether CREW <u>may</u> receive fees; if so, it will then decide whether it <u>should</u> receive them.  <u>See</u> <u>Brayton</u>, 641 F.3d at 524.

A.  Eligibility

A FOIA "complainant has substantially prevailed" and, consequently, is eligible for a

fee award if it "has obtained relief through either – (I) a judicial order, or an enforceable written

agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency,

if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii).  The Court need not

linger over this inquiry.  CREW's success in the underlying suit clearly renders it eligible for a

fee award, a point the Government concedes.  See Opp. at 9.

B.  Entitlement

The gravamen of this Motion, therefore, is whether CREW is "entitled" to an award of

fees.  The goal of the entitlement analysis is to ensure that attorney fees are distributed in a

manner consistent with the purpose of FOIA's fee provision, which "'was not enacted to

provide a reward for any litigant who successfully forces the government to disclose

information it wished to withhold.'"  Davy, 550 F.3d at 1158 (quoting Nationwide Bldg. Maint.,

Inc. v. Sampson, 559 F.2d 704, 711 (D.C. Cir. 1977) (citing S. REP. NO. 93-854, at 17 (1974))).

Instead, it serves the "more limited purpose" of "remov[ing] the incentive for administrative

resistance to disclosure requests based not on the merits of exemption claims, but on the

knowledge that many FOIA plaintiffs do not have the financial resources or economic

incentives to pursue their requests through expensive litigation.'"  Id. (quoting Nationwide, 559

F.2d at 711 (citing S. REP. NO. 93-854, at 17)).

With this purpose in mind, the Court must make a determination as to attorney-fee

entitlement by considering at least four different factors:  "(1) the public benefit derived from

the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the

records; and (4) the reasonableness of the agency's withholding of the requested documents."

5

Id. at 1159; see also Tax Analysts v. Dep't of Justice, 965 F.2d 1092, 1093 (D.C. Cir. 1992);

Negley, 818 F. Supp. 2d at 72. No one criterion is dispositive, see Davy, 550 F.3d at 1159, and

"[t]he sifting of those criteria over the facts of a case is a matter of district court discretion."

Tax Analysts, 965 F.2d at 1094 (citing Church of Scientology v. Harris, 653 F.2d 584, 590

(D.C. Cir. 1981)).

In this case, CREW's suit may be divided into three parts. Because the balance of the

entitlement factors shifts significantly after the ruling in CREW I, the Court will analyze this

phase of litigation first and then consider the later rounds together.

### 1. Briefing in CREW I

As a threshold matter, it is uncontested that factors (2) and (3) – the "commercial

benefit" and "plaintiff's interest" factors, which "are closely related and often considered

together," Tax Analysts, 965 F.2d at 1095 – favor CREW. See Opp. at 10 n.1. Plaintiff is a

nonprofit corporation "committed to protecting the rights of citizens to be informed about the

activities of government officials and to ensuring the integrity of government officials."

Compl., ¶ 3. In furtherance of this enterprise, CREW disseminates to the public the records it

acquires through FOIA requests. See, e.g., Mot. at 5 n.2. As an entity that "'gathers

information of potential interest to a segment of the public, uses [its] editorial skills to turn the

raw materials into a distinct work, and distributes that work to an audience,'" CREW is "among

those whom Congress intended to be favorably treated under FOIA's fee provision." Davy, 550

F.3d at 1161-62 (quoting Tax Analysts, 925 F.2d at 1095). Because CREW derived no

commercial benefit from its requests and sought these records in its public-interest capacity, the

second and third factors militate strongly in favor of a fee award.

Like factors two and three, the first factor – the "public benefit derived from the case" –
also weighs in CREW's favor.  This factor "requires consideration of both the effect of the
litigation for which fees are requested and the potential public value of the information sought."
Id. at 1159.  In evaluating this criterion, it is important to note that "[t]he simple disclosure of
government documents does not satisfy the public interest factor."  Alliance for Responsible
CFC Policy, Inc. v. Costle, 631 F. Supp. 1469, 1471 (D.D.C. 1986) (citing Fenster v. Brown, 617
F.2d 740, 744 (D.C. Cir. 1979)).  Instead, the Court must determine whether "the complainant's
victory is likely to add to the fund of information that citizens may use in making vital political
choices."  Cotton v. Heyman, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (quoting Fenster, 617 F.2d at
744) (internal quotation marks omitted).

CREW's FOIA request concerned a matter of undeniable public import.  As the Court
previously noted, the allegations against Rep. Lewis were significant.  CREW I, 846 F. Supp. 2d
at 74.  The public had a clear interest in documents concerning Lewis's investigation, especially
considering "the backdrop of broader public concerns about the [DOJ's] handling of allegations
of corruption leveled against high-ranking public officials."  Id.  Indeed, CREW ultimately
published a report based on the disclosures ordered by the Court in CREW I, a report that itself
received media attention.  See Mot., Exhs. A, B.  This demonstrated interest in the released files
supports a public-benefit finding here.  See, e.g., Judicial Watch, Inc. v. Dep't of Justice, 878 F.
Supp. 2d 225, 234-35 (D.D.C. 2012) (noting "the national media coverage"); CREW v. Dep't of
Justice, 820 F. Supp. 2d 39, 45-46 (D.D.C. 2011) ("[V]arious media outlets covered the story.").

The fourth factor – the reasonableness of the agency's withholding – is a closer call.  This
factor requires consideration of "whether the agency's opposition to disclosure 'had a reasonable
basis in law,' Tax Analysts, 965 F.2d at 1096, and whether the agency 'had not been recalcitrant

in its opposition to a valid claim or otherwise engaged in obdurate behavior,' LaSalle Extension,

627 F.2d [481,] 486 [(D.C. Cir. 1980)]." Davy, 550 F.3d at 1162.  Significantly, the burden

remains with the agency: "The question is not whether [Plaintiff] has affirmatively shown that

the agency was unreasonable, but rather whether the agency has shown that it had any colorable

or reasonable basis for not disclosing the material until after [Plaintiff] filed suit."  Id. at 1163.

     In this case, DOJ refused to provide records to CREW based on "a policy of categorically

withholding law-enforcement files concerning a third party absent his consent, proof of his death

or a demonstration of an overriding public interest."  See CREW I, 846 F. Supp. 2d at 75.  On

the one hand, Justice had an arguable basis for applying this policy to CREW's request.  In

originally passing on DOJ's withholdings, the Court recognized that "[i]n some circumstances . .

. 'rules exempting certain categories of records from disclosure are permitted, even encouraged,

as a workable manner of meeting FOIA obligations.'"  CREW I, 846 F. Supp. 2d at 75 (quoting

Nation Magazine, Wash. Bureau v. U.S. Customs Servs., 71 F.3d 885, 893 (D.C. Cir. 1995)).  At

the time of suit, moreover, DOJ's policy had recently been upheld by another court in this

district.  See CREW I, 846 F. Supp. 2d at 75 (citing Graff v. FBI, 822 F. Supp. 2d 23, 35-37

(D.D.C. 2011)).  On the other hand, the Court ultimately found the policy inappropriate for this

case and forced DOJ to release thousands of pages of responsive materials.  In addition, the D.C.

Circuit has since rejected a categorical approach in similar circumstances.  See CREW v. Dep't

of Justice, 746 F.3d 1082, 1087, 1095-96 (D.C. Cir. 2014) (finding categorical approach

inappropriate where CREW sought information regarding FBI's wide-ranging public-corruption

investigation into former lobbyist Jack Abramoff).

     The Court need not parse the reasonableness of DOJ's nondisclosures, however, because

even if Justice did prevail on this one factor, CREW's success on the first three would still tip the

balance in favor of awarding fees. The D.C. Circuit "has repeatedly asserted that 'the court must be careful not to give any particular factor dispositive weight.'" Campaign for Responsible Transplantation v. Food & Drug Admin., 593 F. Supp. 2d 236, 244 (D.D.C. 2009) (quoting Sampson, 559 F.2d at 714 (D.C. Cir. 1977)). The only time when the fourth factor would control is "when the agency has demonstrated that it had a lawful right to withhold disclosure." Davy, 550 F.3d at 1159; see also Chesapeake Bay Found., Inc. v. Dep't of Agric., 11 F.3d 211, 216 (D.C. Cir. 1993) ("[T]here can be no doubt that a party is not entitled to fees if the Government's legal basis for withholding requested records is correct."), abrogated in part on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources, 532 U.S. 598, 601-02 (2001). Although DOJ's withholdings may not have been unreasonable, the Court, weighing the factors, nonetheless finds that the other three outweigh this factor for briefing done in CREW I.

### 2. Briefing in CREW II and CREW III

Putting aside the original round of briefing, a balancing of the four factors in relation to subsequent briefing yields a different outcome. While the second and third factors – the "commercial benefit" and "plaintiff's interest" – remain in CREW's column, the first and fourth now swing to DOJ. After this Court had rejected DOJ's categorical nondisclosure, the Government released over two thousand documents and withheld thousands more under various FOIA exemptions. DOJ once again moved for summary judgment, and although the Court was impressed by Defendant's efforts to search and catalog the disclosed materials, it concluded in CREW II that the agency needed to offer further documentation to support its decision to invoke particular exemptions. As a result of this ruling, the Criminal Division produced a revised Vaughn Index and, in the course of preparing it, determined that two additional single-page

documents could be released in part to CREW.  See Opp., Exhs. B, C.  Likewise, EOUSA's

revisions resulted in the disclosure of two other previously unreleased documents.  See id.,

Exhs. D, E.  In the third round of briefing, as previously discussed, the Court sided with the

Government and ordered the release of no documents.

So these are the spoils of CREW's victory in the second round of litigation: four

documents, none of which sheds any light on the investigation of Rep. Lewis.  See id., Exhs. B,

C, D, E.  Such "simple disclosure of government documents" alone "does not satisfy the public

interest factor," Costle, 631 F. Supp. at 1471, and the release of these four documents was not

"likely to add to the fund of information that citizens may use in making vital political choices."

Cotton, 63 F.3d at 1120.  The media coverage of CREW's report, moreover, relates only to the

initial disclosure compelled by the Court's decision in CREW I.  See Mot., Exhs. B, C, D, E.

CREW argues in response that "there is a clear public benefit in requiring DOJ to follow

the requirements of . . . FOIA," implying that technically prevailing in the second round

benefited the public.  See Rep. at 2.  Neither case it cites for this proposition, however, is helpful.

In Halperin v. Dep't of State, 565 F.2d 699 (D.C. Cir. 1977), the D.C. Circuit observed in a

footnote that because the litigant there had "benefited the nation by making the [agency] aware

of the laws it must observe," he had likely "substantially prevailed" within the meaning of FOIA.

Id. at 706 n.11.  In other words, in some circumstances, alerting an agency of its FOIA

responsibilities might render a party eligible for fees.  See id. (citing 5 U.S.C. § 552(a)(4)(E)).

Plaintiff's second authority cites Halperin for this very proposition.  See Church of Scientology

of California v. Harris, 653 F.2d 584, 589 (D.C. Cir. 1981).  These cases have nothing to do with

determining whether the public benefited so as to find an entitlement to attorney fees.  If

CREW's position were correct, moreover, every prevailing party in FOIA litigation would

automatically "benefit the public" by virtue of its victory.  The Court, therefore, finds that the

first factor weighs against CREW in regard to <u>CREW II</u> and <u>CREW III</u> briefing.

The fourth factor – the reasonableness of DOJ's withholdings – also turns out differently

in later rounds of the litigation.  Whereas initial briefing centered on DOJ's unfounded policy of

categorical nondisclosure, the second stage focused on the adequacy of Justice's <u>Vaughn</u> Indices.

<u>See</u> <u>CREW II</u>, 955 F. Supp. 2d at 10.  Although the Court found that the Department had failed

to provide sufficient documentation for an evaluation of its exemption claims, the Opinion also

concluded that DOJ's "time-consuming efforts" were "impressive."  <u>Id.</u> at 8.  The Court lauded

EOUSA's attempt to comply with FOIA's requirements and noted the nearly 2,000 personnel

hours expended in response to CREW's request.  <u>See id.</u> at 16.  As to the withholdings

themselves, Defendant was ultimately vindicated when, in the third round of litigation, the Court

entered summary judgment in DOJ's favor.  <u>See</u> <u>CREW III</u>, 2014 WL 2604640, at *1.

Considering the sheer volume of responsive materials, the Government's expenditures in

complying with the Court's orders, and Defendant's ultimate success on the merits of its

withholdings, the Court concludes that neither the withholdings nor the <u>Vaughn</u> Indices at issue

in <u>CREW II</u> represent unreasonable positions.

In conclusion, after the first stage of briefing, there was no public benefit to further

litigation, and the Government's withholdings were not unreasonable.  Because these factors

favor DOJ and clearly outweigh factors two and three, CREW is not entitled to attorney fees for

<u>CREW II</u> and <u>CREW III</u> briefing.

C.  <u>Calculating the Fees</u>

Having determined that CREW is entitled to a partial award of attorney fees, the Court

must now calculate the precise size of that award.  The "usual method of calculating reasonable

attorney's fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." Bd. of Trs. of Hotel and Rest. Emps. Local 25 v. JPR, Inc., 136 F.3d 794, 801 (D.C. Cir. 1998) (citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564 (1986)).  Where, as here, the attorneys to be compensated are public-interest attorneys without a customary hourly rate, courts look to the prevailing market rates in the community.  See Blum v. Stenson, 465 U.S. 886, 896 (1984); Local 25, 136 F.3d at 800-01.  To determine that rate, courts in this circuit look to the Laffey Matrix, "a schedule of fees based on years of attorney experience that was developed in Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354 (D.D.C. 1983), rev'd on other grounds, 746 F.2d 4 (D.C. Cir. 1984)." ACLU v. Dep't of Homeland Sec., 810 F. Supp. 2d 267, 277 (D.D.C. 2011) (quoting Judicial Watch, Inc. v. DOJ, 774 F. Supp. 2d 225, 232 (D.D.C. 2011)).

CREW requests $82,049.03 for its work on the underlying litigation.  See Mot. at 18.  For the reasons stated above, however, the Court will ignore all sums CREW seeks in the second and third rounds of briefing.  As to briefing in CREW I, only one attorney, Anne Weismann, seeks compensation for her work.  She claims that she spent 31.65 hours working on the initial briefs. See Mot., Exh. E (Decl. of Anne Weismann).  CREW multiplies this time by a Laffey Matrix determination that values her work at $734 per hour for a total request of $23,231.10 on CREW I briefing.  CREW also seeks $20,681.25 in "fees on fees" – i.e., for work on this Motion for Attorney Fees.  See Mot. at 18; Weismann Decl.; Rep. at 18 n.9.

DOJ brings three principal challenges to CREW's claim for fees.  First, it argues that Weismann's timekeeping practices are not sufficient to entitle CREW to the amount it seeks. Second, it contends that CREW's Laffey Matrix is inappropriate for this case. Third, it asserts

that the Court should either refuse to award or deeply discount CREW's requests for "fees on fees."  The Court will treat each in turn.

### 1.  CREW's Timekeeping Practices

"[The D.C. Circuit] has been very explicit about what documentation is necessary to recover attorney fees."  Weisberg v. Webster, 749 F.2d 864, 872 (D.C. Cir. 1984).  Specifically, it has emphasized that "[c]asual after-the-fact estimates of time expended on a case are insufficient to support an award of attorneys' fees.  Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney."  Concerned Veterans, 675 F.2d at 1327.  In addition, "courts in this District and others" have often required that attorneys bill in ten-minute or six-minute increments and "have reduced attorneys' fees on the grounds that billing in increments smaller than quarter-hours is more accurate."  Thomas ex rel. A.T. v. Dist. of Columbia, 2007 WL 891367, at *4 (D.D.C. 2007) (citing Blackman v. Dist. of Columbia, 59 F. Supp. 2d 37, 44 (D.D.C. 1999), and Bd. of Educ. of Frederick Cty. v. I.S., 358 F. Supp. 2d 462, 470 (D. Md. 2005)).

DOJ claims Weismann's timekeeping practices do not satisfy this standard.  According to Justice, Weismann did not maintain contemporaneous timekeeping records describing the work performed on this case, and she failed to state the increments in which she kept her time.  See Opp. at 29-30.  DOJ argues that these deficiencies demonstrate her failure to heed this Court's admonition to CREW in a prior case to "maintain better contemporaneous records and record . . . time in more appropriate increments."  CREW, 825 F. Supp. 2d 226, 231 (D.D.C. 2011).  In that case, this Court found Weismann's explanation inadequate where she had produced her estimate from a review of "daily time sheets" that "indicated the number of hours . . . spent on specific

cases" without assigning the time to specific tasks.  Id. at 231 (quotation marks omitted).

Working from these sheets, Weismann described her time calculations in that case as follows:

> I reviewed the hours I spent on the case in coordination with the docket sheet, my case files, and periodic notes of daily activities I maintain on my calendar, all of which informed me as to the specific matter pending on a date on which I had expended time. For example, knowing the parties had filed a joint status report with the Court on July 12, 2010, allowed me to attribute the time I spent on this case in the days preceding July 12, 2010 to that task.

Id.

> Weisman's explanation in this case is even less detailed:

> I reviewed my daily time sheets and separate notes I maintain on individual cases.  In addition, since October 2013, CREW has implemented an electronic timekeeping system specifically for litigation.  I reviewed those records as well to determine the total amount of time I spent on this case.

See Weismann Decl., ¶ 5.  Not only does Weismann again calculate her time based on a *post-hoc* "review" of "daily time sheets and separate notes," but she also provides even less clarity of how she came to attribute her time to any specific task.  She does not indicate the increments in which she billed, nor is any increment readily discernable from her entries.  Finally, since the electronic timekeeping system she references was not implemented until well after briefing in CREW I had concluded, the Court does not consider it.

CREW cites two recent cases approving Weismann's timekeeping practices, but these are distinguishable.  In the first, she did keep notes "with specifics of the hours which were devoted to distinct activities."  CREW v. Dep't of Justice, No. 11-754, slip. op., at 11 (D.D.C. Aug. 4, 2014) (emphasis added).  In the second, similarly, the court distinguished her practices from cases like this one where she "maintained daily timesheets . . . , but did not itemize the specific

tasks performed on those cases." <u>CREW v. Federal Election Commission</u>, No. 11-951, 2014 WL 4380292, at *10 (D.D.C. Sept. 5, 2014) (emphasis added).

To be clear, the Court is not faulting Weismann for failing to heed its prior warning; all but an hour of the work she completed on briefing in <u>CREW I</u> occurred <u>before</u> the Court issued that admonition. The deficiencies, nonetheless, remain. As it did last time, the Court finds a complete disallowance of fees unwarranted; the records here are not so deficient as to prevent the Court from "mak[ing] an informed determination as to the merits of the application." <u>Concerned Veterans</u>, 675 F.2d at 1327. CREW's fee award, however, will be reduced to account for any inaccuracies and overbilling that may have occurred as a result of its unacceptable timekeeping habits. <u>See</u> <u>Berkeley v. Home Ins. Co.</u>, 68 F.3d 1409, 1419-20 (D.C. Cir. 1995) (affirming district court's reduction of fees by 50% "in light of post-hoc recollections two years after the fact and methodologically flawed estimates"). The Court will, therefore, reduce CREW's fees by 30%  – a rate suggested by Defendant to account for "uncertainty regarding the amount of fees to which Plaintiff could possibly be entitled." <u>See</u> Opp. at 32. This is comparable to the 37.5% by which the Court reduced Weismann's requested fee in the prior case. <u>CREW</u>, 825 F. Supp. 2d at 231. The Court concludes by quoting its previous advisory: "[I]f CREW wishes to receive unreduced fee awards in the future" it must "maintain better contemporaneous records and record [its] time in more appropriate increments." <u>CREW</u>, 825 F. Supp. 2d at 231.

> 2. *The* Laffey *Matrix*

DOJ next argues that CREW's fee matrix is inappropriate. To calculate fees, CREW uses a <u>Laffey</u> Matrix developed by economist Dr. Michael Kavanaugh that has been used in cases in this circuit since 1996. <u>See</u> Mot., Exh. F (Declaration of Michael Kavanaugh), ¶ 12. To build his matrix, Kavanaugh took a sample of legal-services costs from 1989 and adjusted them using

the Legal Services Index (LSI) constructed by the Department of Labor.  See id, ¶¶ 8, 17, 23.

For ease of reference, the Court will refer to this model as the "LSI Matrix."  Under the LSI

Matrix, the attorneys who worked on this matter – both of whom have over twenty years'

experience – are entitled to hourly rates between $734 and $753 for the relevant time period.  See

Mot. at 18.  DOJ, on the other hand, urges the Court to look to the Laffey Matrix maintained at

the U.S Attorney's Office for the District of Columbia.  This Matrix is based on 1982 rates and is

adjusted using the "All-Items Regional [Consumer Price Index]," also maintained by the

Department of Labor.  See Decl. of Kavanaugh, ¶¶ 9, 14 n.5.  The Court will refer to this as the

"CPI Matrix."  Under the CPI Matrix, CREW's attorneys would be entitled to hourly rates

between $475 and $520.  See Opp. at 23.  The distinction is thus significant.

      In a thoughtful and thorough opinion, another judge in this district recently found the LSI

Matrix championed by CREW preferable to the CPI Matrix urged by DOJ.  See Eley v. D.C.,

999 F. Supp. 2d 137, 152 (D.D.C. 2013).  Judge Beryl Howell there concluded that (1) the

increase in the price of legal services has far outstripped the increase in overall prices nationally;

(2) the D.C. legal market is ranked third for highest cost of legal services in the nation; and

therefore (3) the LSI Matrix – which is based on the price of legal services nationally – is likely a

better approximation of the community rates for those services in D.C. than a matrix adjusted

using a general pricing index.  See id. at 153-54.  The LSI Matrix also has the advantage of being

based on more recent data than the CPI Matrix.  The Court finds these persuasive reasons to

prefer the former over the latter.

      DOJ nonetheless begs to differ.  It emphasizes that CREW itself has endorsed the CPI

Matrix in "at least two recent FOIA cases," implying that Plaintiff is somehow now estopped

from calculating fees in any other way.  See Opp. at 21.  It is not.  Second, DOJ argues that,

Case 1:11-cv-00374-CRC   Document 56-4   Filed 10/10/14   Page 17 of 20

although the LSI Matrix might be appropriate for complex litigation, this is a simple case, and

for simple cases, the Court should stick to the CPI Matrix.  See Opp. at 24.  There are two

problems with this argument.  To begin with, it is not clear why a more accurate estimate of

market rates might be appropriate for complex cases, but simple cases are stuck with a less

accurate model – except, of course, that by happenstance the less accurate model produces lower

rates.  In addition, the cases upon which DOJ relies to argue that complexity is a proper

consideration in calculating fees are IDEA cases, and they consider whether to apply a Laffey

Matrix as opposed to some other fee schedule.  See Opp. at 24-25 (citing Gray v. D.C., 779 F.

Supp. 2d 68, 73 (D.D.C. 2011) (declining to award fees under Laffey Matrix); Gardill v. D.C.,

930 F. Supp. 2d 35, 43 (D.D.C. 2013) ("Plaintiffs have not carried their burden of showing their

entitlement to full Laffey rates for most of the cases.")).  Here, on the other hand, there is no

doubt that a Laffey Matrix is the correct way to measure rates; the only question is which one.

   Finally, DOJ argues that the LSI Matrix rates are unreasonable because – as another court

in this district concluded – they are not "the prevailing market rates for attorneys performing

complex federal litigation other than those practicing law at the District of Columbia's largest

law firms."  Heller v. D.C., 832 F. Supp. 2d 32, 46 (D.D.C. 2011) (rejecting the LSI Matrix).

This criticism, however, was also addressed in Eley.  There the court acknowledged that large

law firms may charge more than smaller ones, but concluded that such pricing differentiation in

the attorney-fee context has been rejected by both the Supreme Court and the D.C. Circuit.  See

999 F. Supp. 2d at 155.  In Blum v. Stenson, 465 U.S. at 895, for instance, the Supreme Court

explained that the "'reasonable fees' under § 1988 are to be calculated according to the

prevailing market rates in the relevant community, regardless of whether plaintiff is represented

by private or nonprofit counsel."  And in Save Our Cumberland Mountains, Inc. v. Hodel, 857

F.2d 1516 (D.C. Cir. 1988), the D.C. Circuit applied the reasoning of <u>Blum</u> to conclude that "the prevailing market rate method heretofore used in awarding fees to traditional for-profit firms and public interest legal services organizations shall apply as well to those attorneys who practice privately and for profit but at reduced rates reflecting non-economic goals." <u>Id.</u> at 1524. There is, in the end, no reason to reward a large law firm that takes a case like this on a *pro bono* basis with "its usual handsome rates," but to give an organization that has chosen to further "nonpecuniary goals," like CREW, a lower rate for the same work. <u>See</u> <u>Eley</u>, 999 F. Supp. 2d at 155.

In sum, the Court is persuaded that CREW's LSI Matrix stands on sound methodological footing, that it is appropriate in a case of this complexity, and that it captures the relevant rates regardless of the size or nature of the entity seeking fees.

### 3. Fees on Fees

CREW last seeks an award of attorney fees for the time expended in briefing the instant Motion. DOJ contends that the Court should decline to approve CREW's requests for these fees "or, at the very least, should reduce the amount of 'fees on fees' to take into account reductions that the Court makes to Plaintiff's fee award." Opp. at 32. The latter argument makes sense. Courts in this district have concluded that awards of "fees on fees" should be reduced to exclude the amount of time spent unsuccessfully defending fee requests denied by the court. <u>See, e.g.</u>, <u>Nat'l Veterans Legal Servs. Program v. Dep't of Veterans Affairs</u>, 1999 WL 33740260, at *5-6 (D.D.C. 1999); <u>see also</u> <u>Commissioner, I.N.S. v. Jean</u>, 496 U.S. 154, 163 n.10 (1990) ("[F]ees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation."). "Where a lawsuit consists of related claims," however, "a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court

did not adopt each contention raised." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 440 (1933); <u>see also</u>

<u>Electronic Privacy Info. Ctr. v. Dept. of Homeland Security</u>, 811 F. Supp. 2d 216, 237 (D.D.C.

2011) (discussing the separability of claims in the "fees on fees" context).

      CREW seeks $20,681.25 in attorney fees relating to work on this Motion, based on 18.25

hours at a rate of $753 per hour and 9 hours at a rate of $771 per hour.  <u>See</u> Mot. at 18; Rep. at

18 n.9.  The Court will award CREW the same "percentage of fees for fee litigation as it does for

fees on the merits."  <u>EPIC v. DHS</u>, 982 F. Supp. 2d 56, 61 (D.D.C. 2013); <u>Judicial Watch</u>, 878 F.

Supp. 2d at 241 (reducing requested fees-on-fees award in same ratio as reduction of award for

litigation of case).  The Court will not, however, further discount this award for insufficient

billing practices relating to this Motion.  Of the 27.25 hours CREW claims for the fees-on-fees

work, 25.5 were completed by Scott Hodes, whose recordkeeping practices do not suffer the

same deficiencies as Weismann's.  Unlike her, Hodes "maintain[ed] a tally of time devoted to

<u>each discrete task</u> performed during the course of the litigation," which was "compiled on a

calendar which [Hodes] updated as additional time was devoted to the case."  Mot., Exh. D

(Declaration of Scott Hodes), ¶ 5 (emphasis added).  "Thus," Hodes explains, when he "worked

on a specific <u>task</u>, [he] would create an entry <u>describing the work</u> (e.g. 'Draft cross-motion') and

then enter the time devoted to <u>that task</u> for that specific day (e.g., '2 hours[']).''  <u>Id.</u> (emphases

added).  It is clear, moreover, from Hodes's declaration that he billed in quarter-hour increments

– admittedly not <u>best</u> practices, but at least an identifiable and reasonable increment in which to

keep time.  The Court will, therefore, only discount the fees-on-fees award to account for the

relative lack of success of CREW's underlying request.

      *4.  Calculations*

Now, to put it all together.  CREW is entitled to an award for 31.65 hours of fees associated with briefing in <u>CREW I</u>.  This total is multiplied by the rate provided by the LSI Matrix for this time period – $734 per hour.  <u>See</u> Kavanaugh Decl. ¶ 24. That product is then discounted by 30% due to the deficiencies in CREW's billing practices.  CREW, accordingly, is entitled to the following fees expended on the underlying litigation:

$$31.65 \text{ hrs} * \$734 * 0.7 = \mathbf{\$16,261.77}$$

As to the award for fees on fees, CREW seeks $20,681.25.  The Court will honor CREW's request in proportion to its success in the underlying litigation.  CREW requests $82,049.03 for its work on the merits, and the Court is awarding it $16,261.77.  Thus the percentage of the fees-on-fees award is calculated as follows:

$$\$16,261.77 / \$82,049.03 = \mathbf{19.8\%}$$

This percentage is then applied to CREW's fees-on-fees request:

$$\$20,681.25 * .198 = \mathbf{\$4,094.89}$$

To calculate the total award (together with $450 in costs for filing the instant Motion) therefore, the Court adds it all up as follows:

$$\$16,261.77 + \$4,094.89 + \$450 = \mathbf{\$20,806.66}$$

## III.    Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order granting in part and denying in part Plaintiff's Motion for Attorney Fees and Costs, and awarding CREW $20,806.66.


*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  <u>October 24, 2014</u>

20