UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>        Plaintiff,<br><br>        v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civ. No. 11-0374 (CRC)<br>)<br>)<br>)<br>)<br>) |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") seeks an award of attorneys' fees and costs under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E)(ii), based upon its success in obtaining disclosure of material initially withheld by defendant Department of Justice ("DOJ"). The agency's opposition to CREW's fee motion is limited to its contention that the hourly rates requested are unreasonable. CREW submits this response to DOJ's opposition.

**Discussion**

As CREW has shown, Plaintiff's Motion for an Award of Attorneys' Fees and Costs ("Pl. Mot.") at 7-10, the Court has reiterated in several recent decisions that the appropriate method to determine prevailing market rates for attorneys' fee awards is reflected in an updated *Laffey* matrix derived from the Legal Services Index ("LSI"). *See, e.g., Eley v. District of Columbia*, 999 F. Supp. 2d 137, 156 (D.D.C. 2013) (extensive analysis concluding that "the LSI-adjusted rates are an appropriate measure of the prevailing community rates for attorneys in the Washington, D.C. area"); *Salazar v. District of Columbia*, 991 F. Supp. 2d 39, 47 (D.D.C. 2014)

("[t]he Court remains convinced that [the LSI] methodology is appropriate"); *Citizens for Responsibility and Ethics in Washington v. Dep't of Justice*, No. 11-1021 (JEB), Mem. Op. (October 24, 2014) ("*CREW*") (filed with Pl. Mot. as Exhibit D), at 18 (the "LSI Matrix stands on sound methodological footing" and is appropriate for FOIA case).[1]

In its opposition, DOJ does not attempt to refute (or even address) the Court's analysis in those decisions, but instead seeks to rely primarily upon the declaration of Laura A. Malowane submitted in another case. Defendant's Opposition to Motion for Attorney's Fees ("Def. Opp.") at 5-8, 11, 13. CREW notes that Dr. Malowane's opinions concerning attorneys' fees in the Washington, D.C. market have not been consistent. Indeed, in a decision concerning appropriate fees for work performed in 2011, the Court of Federal Claims found "based on Dr. Malowane's data, that . . . the requested forum rate of $706 is in the mid-range for 'national' law firms with principal offices in Washington, D.C. . . ." *Biery v. United States*, 2012 U.S. Claims LEXIS 1446, 21 (Fed. Cl. Nov. 27, 2012). *See also* Declaration of Dr. Laura A. Malowane (submitted in *Biery* and filed herewith as Exhibit A), ¶¶ 19, 21 ("the national rates of plaintiffs' attorneys [$705 - $706 per hour] are in line with market rates."). As this Court recognized several months ago in *Citizens for Responsibility and Ethics in Washington v. Dep't of Justice*, No. 11-0754 (GK), Mem. Op. (August 4, 2014) (filed with Pl. Mot. as Exhibit C), Dr. Malowane "has given inconsistent opinions concerning the calculation of attorneys' fees in the District of Columbia

---

[1] DOJ begins its argument with a reference to "[t]he Supreme Court's jurisprudence on fees-shifting statutes," and says "the Court has been consistent in explaining that the purpose of the fee-shifting statute is not to provide a windfall to the prevailing counsel," Def. Opp. at 3-4, citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). That decision dealt with "enhancements" to the "lodestar" used to calculate an appropriate fee, an issue not raised in this case, where CREW simply seeks the tradition lodestar amount of attorneys' fees, without enhancement. In any event, it is noteworthy that the Supreme Court in *Perdue* approvingly cited this Court's decision in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), where the LSI methodology was applied to determine the prevailing market rate for attorneys' fees. 559 U.S. at 555 n.6.

market" and testified in *Biery* that "the national rates of plaintiffs' attorneys ($705-706 per hour) are in line with market rates." The Court noted that "[t]hose hourly rates are also compatible with the rates produced by use of the LSI Methodology." *Id.* at 10, n.4 (citations omitted). As such, DOJ's proffered declaration undermines, not supports, its argument that the Court should depart from its recent strong endorsements of the LSI methodology and the rates reflected in the LSI-adjusted *Laffey* matrix. *Cf. Flores-Hernandez v. United States*, 910 F. Supp. 2d 64, 76, 79 (D.D.C. 2012) (expert's "inconsistent testimony impacts the credibility of his . . . opinions;" "[g]iven his contradictory testimony . . ., the Court does not find [expert's] opinions . . . to be credible").

Beyond its reliance upon the proffered Malowane declaration, DOJ asserts that "[t]he majority of judges of this Court who have had to decide between the competing matrixes have adopted the USAO *Laffey* Matrix," and cites a number of such decisions. Def. Opp. at 5-6. Of those cases, only in *Heller v. District of Columbia*, 832 F. Supp. 2d 32 (D.D.C. 2011), did the Court consider evidence similar to that before it in this case; the agency characterizes the decision as "rejecting [LSI-adjusted] rates and crediting expert opinion of Dr. Malowane over that of Dr. Kavanaugh," Def. Opp. at 5.[2] Significantly, the Court in *Heller* relied upon two declarations submitted by Dr. Malowane: one dated August 11, 2009, and the other July 9, 2010. 832 F. Supp. at 43. As CREW has shown, subsequent to the submission of those declarations, Dr. Malowane provided testimony in *Biery*, by declaration dated December 20, 2011, in which she supported market rates in line with those calculated by Dr. Kavanaugh. In light of that fact, CREW submits that any reliance upon the Court's earlier analysis of the issue in *Heller* is misplaced. Similarly, in *Queen Anne's Conservation Ass'n v. U.S. Dept. of State*, 800 F. Supp.

---

[2] CREW here relies upon a declaration of Dr. Michael Kavanaugh (filed with Pl. Mot. as Exhibit E), and seeks compensation at the hourly rates he calculated using the LSI methodology.

3

2d 195, 200-201 (D.D.C. 2011), the magistrate judge also relied upon the earlier testimony of Dr. Malowane and noted that, unlike here, that evidence was "largely unrebutted" (indeed, Dr. Malowane subsequently rebutted her *own* prior testimony).

In several of the cases DOJ cites, there apparently was no evidence before the Court with respect to the analytic validity of the competing matrices. *See McAllister v. District of Columbia*, -- - F. Supp. 2d ---, 2014 WL 901512 (D.D.C. Mar. 6, 2014); *Berke v. Bureau of Prisons*, 942 F. Supp. 2d 71 (D.D.C. 2013); *Hayes v. D.C. Public Schools*, 815 F. Supp. 2d 134 (D.D.C. 2011); and *Woodland v. Viacom, Inc.*, 255 F.R.D. 278 (D.D.C. 2008).  In the other cases, the Court found that a lack of "complexity" in the underlying litigation rendered use of the LSI-adjusted matrix inappropriate. *See Embassy of the Fed. Republic of Nigeria v. Ugwuonye*, 297 F.R.D. 4, 15 (D.D.C. 2013); *Fisher v. Friendship Pub. Charter Sch.*, 880 F. Supp. 2d 149, 155 (D.D.C. 2012); *Sykes v. District of Columbia*, 870 F. Supp. 2d 86, 95 (D.D.C. 2012); and *Am. Lands Alliance v. Norton*, 525 F. Supp. 2d 135, 150 (D.D.C. 2007).  Here, in contrast, the agency concedes that "the ideal target market [the Court should look to] is the legal market for attorney services within this Court for complex federal litigation." Def. Opp. at 12.  As such, the cited authority bears no relevance to the issue here.[3]

---

[3] As this Court has explained, the *Laffey* matrix establishes "an hourly rates scheme for *complex*, federal litigation under which an attorney's years of experience determine[] his reasonable hourly rate." *Miller v. Holzmann*, 575 F. Supp. 2d 2, 14 (D.D.C. 2008) (emphasis added; citation omitted).  The Court in *Miller* further noted that "this scheme . . . has achieved broad acceptance in this Circuit and has served as a guide in nearly every conceivable type of case [including those under FOIA]," and that "[t]he generic matrix's use in such a diverse range of cases cuts against [any] argument that reasonable rates can be derived only from data peculiar to a case's legal specialty area." *Id*. (citations omitted).  Given DOJ's concession that it is appropriate to use *Laffey* rates to compensate CREW for its legal work, the only issue before the Court is whether to use the updated, LSI-calculated methodology recently and emphatically endorsed by the Court, or whether the USAO matrix is a more reliable indicator of prevailing market rates for complex litigation.

Even if the proffered opinion of Dr. Malowane were consistent with respect to market rates in the Washington area (which, as the Court previously found, it is not), it would not be sufficient to overcome the evidence CREW relies upon. As we explained in our opening brief, the LSI-adjusted rates, as calculated by Dr. Kavanaugh,

> are consistent with the findings of a survey conducted by the National Law Journal in 2012, which reported on rates for partners in four large Washington, DC law firms, with "high" reported rates ranging from $1,250 to $985 per hour, and "median" rates ranging from $750 to $560 per hour.

Pl. Mot. at 10-11 (footnote omitted), citing *National Law Journal*, "A Nationwide Sampling of Law Firm Billing Rates" (filed with Pl. Mot. as Exhibit F). Neither DOJ nor Dr. Malowane disputes those survey results. Rather, Dr. Malowane's declaration appears to rely upon unpublished "survey data collected by ALM Legal Intelligence, in its annual Survey of Law Firm Economics." Def. Opp. at 6; DOJ Malowane Decl. (DOJ Exhibit 2) ¶ 28.[4] Dr. Malowane describes the survey data as "billing rates of attorneys in the Washington, DC area, from law offices of *all sizes and types*." *Id*. ¶ 32 (emphasis added). *Laffey* matrices, however, are not derived from billing rates from law offices of *all* types; the relevant inquiry is not the price of *all* litigation, but rather the price for *complex federal* litigation. *Miller*, 575 F. Supp. 2d at 14; *see also Eley*, 999 F. Supp. 2d at 157 (*Laffey* matrix "was compiled as a general survey of prevailing rates in this community for highly skilled federal litigators in . . . complex federal litigation.").[5]

DOJ also argues that the LSI-adjusted matrix is not "data-driven," suggesting that the initial rates it is based upon were merely the product of one attorney's requested rates. Def. Opp.

---

[4] Dr. Malowane states that "[t]hese data are available for purchase through the firm ALM Legal Intelligence," *id*. n.21, but neither she nor DOJ has made them available to CREW or the Court.

[5] Indeed, DOJ concedes this point, asserting that "[t]he instant dispute about the competing matrices should center ultimately on which one better tracks the actual inflation of the legal market for *complex federal litigation* in D.C." Def. Opp. at 5 (emphasis added).

5

at 9 (referring to Joseph Yablonski in the case of *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988) (*en banc*) ("*SOCM*")). DOJ is mistaken. The agency incorrectly summarizes *SOCM* by failing to explain the procedural outcome. There, the D.C. Circuit held that Mr. Yablonski's actual rates were *below* market rates, but he was still entitled to the prevailing market rates for the time he was involved in the litigation. *See SOCM*, 857 F.2d at 1522, 1526. DOJ ignores the fact that the court of appeals in *SOCM* directed that, on remand, new calculations for that time be made based on the prevailing market rates. *See id*. at 1526. Thus, the court initiated the creation of a new matrix, which would become the LSI-adjusted matrix. *See* Kavanaugh Decl., ¶ 10 (the earlier *Laffey* matrix "was updated to 1988-89 rates with a new survey in connection with the [*SOCM*] litigation at the urging of the D.C. Circuit"); *see also Eley*, 999 F. Supp. 2d at 150 ("the LSI-adjusted matrix is based on a survey of legal rates in the Washington, D.C. area conducted in 1989 in connection with a settlement in *SOCM*").[6]

      Finally, DOJ seeks to rely upon a Westlaw search to support its contention that the U.S. Attorney's Office's CPI-derived matrix should be used, claiming that the search results confirm the relevance and applicability of the older matrix. Def. Opp. at 10-11. DOJ's search, however, is fatally flawed, as it failed to include the search terms "LSI" or "Legal Services Index," while including other terms like "lodestar" and "attorney fee." *See id*. at 10 n.7. Moreover, a majority of the 130 listed cases arose under the Individuals with Disabilities Education Act ("IDEA"), not FOIA. IDEA cases, however, have been held not to be complex federal litigation, and are thus not comparable to FOIA litigation generally or this case specifically. *See, e.g., Rooths v. District*

---

[6] Lest there be any doubt as to Mr. Yablonski's "market rate," the Court subsequently awarded him $325 an hour for work performed in 1992, based upon declarations establishing appropriate rates in the D.C. market. *See Brown v. Pro Football*, 846 F. Supp. 108, 116-17 (D.D.C. 1994). That rate is in keeping with the LSI-adjusted rate for that time period. *See* Kavanaugh Decl., Attachment 3 ("Adjusted *Laffey* Matrix") (1992 rates for attorneys with 20 years' experience ranging from $320 to $336).

*of Columbia*, 802 F. Supp. 2d 56, 61-62 (D.D.C. 2011). DOJ's reliance on the faulty Westlaw search results is therefore misplaced.

## Conclusion

As the Court has recognized, FOIA's "legislative history evinces a strong desire for courts to be aggressive in awarding attorney's fees to prevailing parties." *Judicial Watch, Inc. v. Bureau of Land Mgt.*, 562 F. Supp. 2d 159, 175 (D.D.C. 2008). In keeping with that intent, the Court should reject DOJ's invitation to depart from its strong recent precedent applying the LSI-adjusted matrix to calculate attorneys' fee awards. For the foregoing reasons, and those presented in CREW's opening brief, the Court should grant this motion and order defendant DOJ to pay CREW attorneys' fees in the amount of $40,786[7] and costs in the amount of $350, for a total of $41,136.

Respectfully submitted,

*/s/ David L. Sobel*
DAVID L. SOBEL, D.C. Bar No. 360418
5335 Wisconsin Avenue, N.W.
Suite 640
Washington, DC 20015
(202) 246-6180

ANNE L. WEISMANN, D.C. Bar No. 298190
MELANIE SLOAN, D.C. Bar No. 434584
Citizens for Responsibility and
 Ethics in Washington
409 7th Street, N.W., Suite 300
Washington, D.C. 20004
(202) 408-5565

Counsel for Plaintiff

---

[7] In addition to the fees of $36,315 accounted for in CREW's opening brief, CREW seeks additional fees incurred in the preparation of this reply: $4,471 for Mr. Sobel (5.8 hours @ $771). *See* Supplemental Declaration of David L. Sobel, filed herewith.