**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF JUSTICE,**<br><br>Defendant. | Case No. 1:11-cv-00374 (CRC) |

**MEMORANDUM OPINION**

In 2011, Citizens for Responsibility and Ethics in Washington ("CREW") filed a Freedom of Information Act request with the U.S. Department of Justice for records related to the agency's investigation and prosecution of Paul J. Magliocchetti, a prominent lobbyist who pled guilty to federal campaign finance law violations. After DOJ categorically withheld all potentially responsive records based on privacy grounds, CREW filed a lawsuit in this Court. As a result of that suit, DOJ released hundreds of pages of relevant documents. A CREW report on Magliocchetti based on those documents was featured in the *Washington Post* and other media outlets. CREW now moves for attorney fees and costs as a prevailing party in the litigation. DOJ does not contest CREW's entitlement to a fee award or dispute the number of hours that CREW attorneys worked on the case. It objects, rather, to the hourly rate to be applied in calculating the award. The Court finds that the rates proposed by CREW, after a modest reduction, are consistent with those charged for similar services by comparable lawyers in Washington, D.C. It will therefore grant CREW's motion for attorney fees and costs.

## I.        Analysis

A prevailing party in a Freedom of Information Act ("FOIA") matter is entitled to "reasonable attorney fees" and other reasonable litigation costs.  5 U.S.C. § 552(a)(4)(E)(i).  The burden lies with the "'fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  Covington v. District of Columbia, 57 F.3d 1101, 1109 (D.C. Cir. 1995) (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)).  As the parties agree that CREW is entitled to some award, and DOJ does not challenge the number of hours for which CREW seeks compensation, the only question is what hourly rates to use to calculate the award.

Two attorneys represented CREW in the underlying litigation:  CREW's chief counsel, Anne L. Weisman, and Washington, D.C. sole-practitioner David L. Sobel.  Weisman attests that she has over 30 years of litigation experience at CREW, DOJ, and the U.S. Department of Labor.  Pl.'s Mot. Attorneys' Fees Ex. B.  She specializes in FOIA litigation and has received numerous national honors for her work in that area.  Id.  Sobel affirms that he has 27 years' experience litigating FOIA matters and is an editor of a leading treatise on federal open government laws.  Pl.'s Mot. Attorneys' Fees Ex. A.  He too has been recognized as a leading national FOIA practitioner.  Id.

As public interest lawyers, CREW's attorneys do not have standard hourly rates.  CREW therefore requests that the Court calculate the award based on the prevailing market rate for complex federal litigation services.  To ascertain this rate, CREW urges the Court to rely on a matrix of hourly fees for complex federal litigation performed by attorneys in Washington D.C. law firms.  CREW's proposed matrix was originally developed in 1982 as part of the litigation in Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354 (D.D.C. 1983), and was updated in 1989 in

2

response to the D.C. Circuit's decision in <u>Save Our Cumberland Mountains v. Hodel</u>, 857 F.2d

1516 (D.C. Cir. 1988).  CREW's expert, economist Michael Kavanaugh, has adjusted the 1989

version of the <u>Laffey</u> matrix for inflation by applying the legal services component of the

Consumer Price Index ("CPI").  The Court will refer to CREW's proposed matrix as the "LSI-

adjusted <u>Laffey</u> matrix."  CREW argues that the LSI-adjusted <u>Laffey</u> matrix best approximates

the hourly billing rates of Washington, D.C. attorneys who engage in complex federal litigation.

DOJ disagrees.  While acknowledging that the <u>Laffey</u> matrix is commonly used to

determine rates in this district, it asks the Court to apply a version of the matrix maintained by

the United States Attorney's Office for the District of Columbia ("USAO").  The government's

proposed matrix adjusts the original 1982 <u>Laffey</u> matrix to reflect increases not in the cost of

national legal services, but in the overall CPI for the Washington-Baltimore area ("CPI-WB").

The difference is significant:  For attorneys with the experience of Ms. Weisman and Mr. Sobel,

the CREW's LSI-adjusted <u>Laffey</u> matrix yields hourly billing rates from $709 to $771 for the

years 2011 through 2014, while the CPI-WB matrix results in rates ranging from $475 to $510.

Much ink has been spilled recently discussing the relative merits of these two matrices in

fee-shifting cases in this district.  <u>E.g.</u>, <u>Salmeron v. District of Columbia</u>, No. CV 13-1615 , 2015

WL 129079, at *5 (D.D.C. Jan. 9, 2015) (rejecting the LSI-adjusted <u>Laffey</u> matrix for

administrative-level litigation under the Individuals with Disabilities Education Act ("IDEA"));

<u>Salazar v. District of Columbia</u>, 991 F. Supp. 2d 39, 47 (D.D.C. 2014) (applying the LSI-

adjusted <u>Laffey</u> matrix rather than the USAO matrix in a 42 U.S.C. § 1983 case); <u>Citizens for</u>

<u>Responsibility and Ethics in Washington v. Dep't of Justice</u>, No. 11-1021, Mem. Op. (October

24, 2014) (applying the LSI-adjusted <u>Laffey</u> matrix in a FOIA case); <u>Citizens for Responsibility</u>

<u>and Ethics in Washington v. Dep't of Justice</u>, No. 11-0754, Mem. Op. (August 4, 2014) (same);

McAllister v. District of Columbia, No. CV 11-2173, 2014 WL 2921020, at *3 (D.D.C. June 27, 2014) (declining to apply the LSI-adjusted Laffey matrix in a "simple" IDEA case); Eley v. District of Columbia, 999 F. Supp. 2d 137 (D.D.C. 2013) (applying the LSI-adjusted Laffey matrix in an extensively-litigated IDEA case); Heller v. District of Columbia, 832 F. Supp. 2d 32, 46 (D.D.C. 2011) (adopting the USAO matrix due to the small size of the prevailing attorney's firm).  Having reviewed the declarations of both sides' experts and the relevant cases, the Court is persuaded that the LSI-adjusted Laffey matrix, while imperfect, offers a better methodology for estimating prevailing market rates for complex federal litigation in Washington, D.C.  In reaching this conclusion, the Court is persuaded by Judge Howell's analysis of the issue in Eley.  As Judge Howell observed, the CPI-WB measures inflation of "such diverse items as personal computer prices, funeral expenses and movie tickets" and therefore "heavily masks the changes in rates for legal services."  999 F. Supp. 2d at 153.  Moreover, the legal services component of the CPI itself "shows that the cost of legal services nationally has far outstripped the increase in overall prices."  Id.  Considering that Washington, D.C. is the third most expensive legal market in the country, the Court agrees with Judge Howell that the LSI-adjusted Laffey matrix—even if it does not capture the precise types of litigation services involved in this case—likely offers a better approximation of D.C. rates for the relevant services than a matrix adjusted using a general inflation index.

Selecting the most appropriate matrix is not the end of the story, however.  Because all "fee matrices are somewhat crude," they merely provide "a useful starting point" for determining prevailing market rates.  Covington, 57 F.3d at 1109; see also Heller, 832 F. Supp. 2d at 45.  The Court still must assess whether the rates reflected in the LSI-adjusted Laffey matrix are reasonable for the attorneys involved and the services rendered in this case.  As evidence of

prevailing market rates, both sides point to law firm billing rate surveys that they claim are consistent with the rates reflected in their respective matrices.  While awarding fees to sole practitioners and public interest lawyers based on law firm billing rates might appear counterintuitive given the differing cost structures involved, both the Supreme Court and the D.C. Circuit have endorsed the practice.  Blum, 465 U.S. at 895 ("The statute and legislative history establish that 'reasonable fees' under [42 U.S.C.] § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel"); Save Our Cumberland Mountains, 857 F.2d at 1524 ("[T]he prevailing market rate method heretofore used in awarding fees to traditional for-profit firms and public interest legal services organizations shall apply as well to those attorneys who practice privately and for profit but at reduced rates reflecting non-economic goals.").  The Court therefore will look to law firm billing rates as a benchmark for the reasonableness of the rates proposed here.

The government's expert, Laura A. Malowane, relies on the 2011 ALM Legal Intelligence Survey of Law Firm Economics, which she contends "provides data of actual average billing rates of attorneys in the Washington, DC area, from law offices of all sizes and types."  Def.'s Opp'n Mot. Attorneys' Fees Ex. 2, ¶ 32 ("Malowane Decl.").[1]  That survey, according to Dr. Malowane, places the average billing rate for Washington, D.C. attorneys with over 20 years' experience at $459 per hour, which is in line with the USAO matrix.  Id. tbl.2.  CREW relies, at least indirectly, on several surveys that Dr. Malowane used in another fee-shifting case to conclude that an hourly billing rate of approximately $700 for a partner at a large

[1]  Unhelpfully, the Government's expert does not explain the methodology underlying the data or provide the Court with the survey itself, saying only that it is "available for purchase." Malowane Decl. at 9 n.21.

Washington, D.C. firm was "well within" prevailing rates at similar-sized firms in comparable locations.  Pl.'s Reply Ex. A, ¶ 19.  Judge Howell referenced yet another survey in <u>Eley</u> that pegged the average hourly rate in 2013 for a law firm partner in Washington, D.C. at $649, or $25 higher than the comparable top-end rate predicted by the LSI-adjusted <u>Laffey</u> matrix.  999 F. Supp. 2d at 153 (citing a Corporate Counsel Magazine nationwide billing rate survey).

While law firm billing rate surveys are a natural source of comparative data in assessing overall rates and trends, their utility in determining a prevailing rate for a specific lawyer providing a particular legal service is limited by several factors.  First, as the surveys referenced above demonstrate, average billing rates vary from survey to survey based on the composition of the participating firms and other factors.  Second, because the surveys lump together a range of services in different practice areas at firms with different economics, the surveys' "average" lawyer rates are derived from a vast range of individual rates.  <u>E.g.</u>, Katelyn Polantz, *Billing Rates Rise, Discounts Abound*, Nat'l L.J., Jan. 5, 2015, at 1, 6 (indicating that partner hourly rates at 169 reporting law firms vary from $220 to $1,250).  Surveys of "standard" billing rates also overlook the fact that clients rarely pay those rates.  Firms frequently discount their standard rates and, even after discounting, lower the effective rate further by writing off a portion of their billed hours to reflect attorney inefficiency and other considerations.  <u>Id.</u> at 6 (noting discounts, fee caps, and write-offs of first-year associate work).  Finally, firms do not always collect 100 percent of the fees they ultimately bill.  For these reasons, reported rates surely overstate the actual fees that law firms are paid—and expect to be paid—for their services.

At the end of the day, the Court must assess whether the fees requested by CREW are consistent with those that would be paid to "lawyers of reasonably comparable skill, experience, and reputation" in the Washington, D.C. legal market.  <u>Covington</u>, 57 F.3d at 1103.  It is

uncontested that CREW's lawyers in this matter are experienced, national experts in FOIA litigation.  The case also involves a matter of national public interest:  The disclosure of information about what prosecutors called "one of the largest federal campaign finance frauds in history."  Press Release, Dep't of Justice, *Lobbyist Sentenced to 27 Months in Prison for Role in Illegal Campaign Contribution Scheme* (Jan. 7, 2011).  And the litigation required to overcome DOJ's categorical withholding of potentially responsive records is aptly described as "complex."  For the reasons discussed above, the Court will use as a starting point the LSI-adjusted Laffey matrix, which yields rates for Ms. Weisman and Mr. Sobel ranging from $709 per hour to $771 per hour in the relevant years.  The Court will reduce those rates by 15 percent, however, to account for the differences between reported rates and actual law firm billing realization.  Consistent with that approach, the Court will award CREW attorney fees in the amount of $27,919 ($32,846 * 0.85) for its litigation of the underlying case.  The Court will also award CREW $6,749 ($7,940 * 0.85) for its litigation of this fee petition.  With an additional $350 in costs, the total award amounts to $35,018.

**II.        Conclusion**

For the reasons discussed above, the Court will grant the Plaintiff's motion for attorney fees.  The Court will issue an order consistent with this opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  February 11, 2015