UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civ. No. 11-0374 (CRC) |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

**Introduction**

By memorandum opinion issued on February 11, 2015, the Court granted the motion of plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") for an award of attorneys' fees and costs and ordered defendant Department of Justice ("DOJ") to pay a total of $35,018. *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 80 F. Supp. 3d 1 (D.D.C. 2015). DOJ appealed, and subsequent to the D.C. Circuit's decision in *Eley v. District of Columbia*, 793 F.3d 97 (D.C. Cir. 2015), the parties jointly moved the court of appeals to remand the case. By order issued on September 17, 2015, the D.C. Circuit remanded the case to this Court, and in a minute order issued later that day, the Court directed CREW to "submit further evidence and briefing consistent with the Circuit's opinion in [*Eley*], by October 19, 2015."

**I. The Rationale of the *Eley* Opinion Does Not Alter This Court's Earlier Holding**

The sole issue in dispute with respect to CREW's motion for an award of attorneys' fees concerned the appropriate hourly rates to apply to calculate the amount of the award. CREW

urged the Court to apply the version of the *Laffey* matrix adjusted for inflation using the Legal Services Index ("LSI"), while DOJ argued in support of its own version of the matrix, adjusted with the broader Consumer Price Index ("CPI"). "Having reviewed the declarations of both sides' experts and the relevant cases," the Court concluded that "the LSI-adjusted *Laffey* matrix, while imperfect, offers a better methodology for estimating prevailing market rates for complex federal litigation in Washington, D.C." 80 F. Supp. 3d at 3.

CREW submits that the appellate decision in *Eley* does not undercut that conclusion. The issue in *Eley* was whether the district court erred in ordering the District of Columbia to pay attorney's fees based upon the LSI-adjusted version of the *Laffey* matrix in a case brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*. The D.C. Circuit began its analysis by emphasizing the language of the IDEA fee provision:

> An IDEA fee award "shall be based on rates *prevailing in the community* in which the action or proceeding arose for the *kind and quality* of services furnished." *Id*. § 1415(i)(3)(C). Thus, if the court finds that "the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for *similar services* by attorneys of reasonably comparable skill, reputation, and experience," it "shall reduce . . . the amount of the attorneys' fees awarded." *Id*. § 1415(i)(3)(F)(ii).

793 F.3d at 99 (emphases added by the court).

Given that statutory requirement, the court focused upon the adequacy of Eley's evidentiary showing and concluded that "[a]bsent from her submission . . . is evidence that her 'requested rates are in line with those prevailing in the community for *similar services*,' *i.e.*, IDEA litigation." *Id*. at 104 (emphasis in original; citations omitted). While Eley had relied upon the LSI-derived *Laffey* matrix, the court of appeals noted the lack of record evidence "demonstrating that IDEA litigation is as complex as the type of litigation that supports the 'enhanced' hourly rates in the LSI *Laffey* Matrix." *Id*. at 105. Indeed, the "complexity" of IDEA

2

litigation has long been raised in fee litigation under that statute, and "district judges in this circuit do not agree on whether *Laffey* rates for complex federal litigation should be imported to non-complex administrative litigation such as most IDEA cases." *Coates v. District of Columbia*, 2015 U.S. Dist. LEXIS 12187, *9 (D.D.C. Feb. 3, 2015).[1]

Here, in contrast, this Court has long recognized that Freedom of Information Act ("FOIA") litigation falls squarely within the class of cases for which *Laffey* rates are appropriate. *See, e.g., Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 982 F. Supp. 2d 56 (D.D.C. 2013); *Nw. Coal. for Alts. to Pesticides v. EPA*, 421 F. Supp. 2d 123 (D.D.C. 2006). Indeed, in several recent cases, federal agency defendants have agreed that *Laffey* rates are appropriate for FOIA litigation. *See, e.g., Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 2015 U.S. Dist. LEXIS 28694, *28 (D.D.C. Mar. 10, 2015) (DHS "urge[d] the Court to look . . . to the *Laffey* Matrix maintained by the U.S. Attorney's Office for the District of Columbia"); *Citizens for Responsibility & Ethics in Wash. v. FEC*, 66 F. Supp. 3d 134, 155 (D.D.C. 2014) ("[T]he parties agreed that attorney fees should be calculated using the *Laffey* Matrix of hourly rates."). *See also Elec. Frontier Found. v. Office of the Dir. of Nat'l Intelligence*, 2008 U.S. Dist. LEXIS 44050, *5 (N.D. Cal. June 4, 2008) (agency asserted "if the Court finds that plaintiff is entitled to an award of attorney's fees and costs, the Court should use the *Laffey* matrix to determine a reasonable award"). DOJ does not depart from that practice here; it has conceded that "the ideal target market . . . is the legal market for attorney services within this Court for complex federal litigation," Defendant's Opposition to Motion for Attorney's Fees (ECF No. 61) at 12, and

---

[1] The D.C. Circuit noted that the magistrate and the district judge in *Eley* had reached conflicting conclusions on the question: "Because the *Laffey* Matrix was created for '*complex* federal litigation in the District of Columbia' . . . the magistrate found the maximum *Laffey* rates 'not appropriate' for Eley's IDEA litigation." 793 F.3d at 103 (emphasis in original; citations omitted).

asserted that "[t]he Court should calculate fees by reference to the *Laffey* Matrix maintained by the U.S. Attorney's Office," *id*. at 3.

Significantly, the D.C. Circuit emphasized in *Eley* that, "[w]e do not decide today whether IDEA litigation is in fact sufficiently 'complex' to use either version of the *Laffey* Matrix (and if so, which version of the *Laffey* Matrix is more appropriate)." 793 F.3d at 105 (footnote omitted). In so stating, the court made two things clear. First, *Laffey* rates are appropriate for "complex" litigation, a category that includes (as both this Court and the government have long recognized) cases brought under FOIA. Second, the court of appeals expressed no opinion as to "which version of the *Laffey* Matrix is more appropriate," and its analysis contains no discussion of the validity of the economic methodologies that underlie the two versions of the matrix.[2]

While this Court cited Judge Howell's opinion in *Eley* in its earlier decision, the Court's reliance was limited to Judge Howell's conclusion that the LSI-derived *Laffey* matrix better reflects current market rates for complex federal litigation in the District of Columbia. 80 F. Supp. 3d at 3–4. Nothing in the court of appeals' decision suggests that the district court opinion in *Eley* was flawed with respect to that issue. Indeed, as noted, the D.C. Circuit expressly declined to consider the relative merits of the "competing" matrices. The conclusion that the LSI-derived matrix is based upon a more accurate economic methodology is not unique to the district court opinion in *Eley*; CREW cited several opinions, dating back to 2000, that considered the merits of the competing approaches and concluded that the LSI-based approach was a more reliable measure of inflation with respect to the cost of local legal services. *See, e.g.*, *Salazar v.*

---

[2]  The court merely noted that "[c]ompeting updated *Laffey* Matrices have developed," and that "[b]oth have their benefits and limitations." *Id*. at 101. The court briefly reviewed the arguments for and against the different approaches, without expressing a preference for either one.

4

*District of Columbia ("Salazar I")*, 123 F. Supp. 2d 8, 11–15 (D.D.C. 2000); *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 156 (D.D.C. 2006); *Salazar v. District of Columbia ("Salazar II")*, 750 F. Supp. 2d 70, 73 (D.D.C. 2011); *Salazar v. District of Columbia ("Salazar III")*, 991 F. Supp. 2d 39, 47 (D.D.C. 2014); *Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*, 2014 U.S. Dist. LEXIS 182097, *25 (D.D.C. Oct. 24, 2014).[3]

### II. The LSI-Adjusted *Laffey* Matrix Accurately Reflects Prevailing Market Rates for Complex Federal Litigation in Washington, DC

In response to the Court's invitation, CREW submits herewith additional evidence demonstrating that the LSI-adjusted version of the *Laffey* matrix better reflects market rates for complex federal litigation in this district than does the CPI-adjusted matrix.

First, CREW submits (as Exhibit A) the declaration of David K. Colapinto, a District of Columbia practitioner with 27 years of experience handling complex federal litigation, including cases brought under FOIA. Declaration of David K. Colapinto, ¶¶ 4 & 8. Mr. Colapinto attests to the fact that his law firm "bases its fee structure in large part on the *Laffey* Matrix, as adjusted for inflation using the method approved by the court in *Salazar v. District of Columbia*, 123 F.

---

[3] In *Eley*, the D.C. Circuit noted that, in *Covington v. District of Columbia*, 57 F.3d 1101, 1110 (D.C. Cir. 1995), it held that plaintiffs met their burden of establishing the reasonableness of their requested rates.

> We so held because the plaintiffs submitted not only "data demonstrating their attorneys' experience in the legal profession and in litigating complex federal court cases, as well as information probative of their attorneys' skill and reputation," they also submitted "a great deal of evidence regarding prevailing market rates for complex federal litigation," including "the *Laffey* matrix, the U.S. Attorney's Office matrix, affidavits attesting to increases in the market rates since the original *Laffey* matrix" *and, importantly, "memorandum opinions in district court cases which relied on these matrices."*

793 F.3d at 104 (emphasis added; citations omitted). CREW submits that the opinions it cites strongly establish the propriety of reliance upon the LSI-derived matrix.

5

Supp. 2d 8, 13 (D.D.C. 2000)." *Id*. ¶ 9. The firm's fees, for senior partners with "thirty plus years" experience, are $995.00/hour, and "[c]lients who have the means to pay the firm's standard market rates are required to pay those fees, and they do, in fact, pay those fees." *Id*. ¶¶ 10–12. Mr. Colapinto further states that, "[b]ased on more than 25 years experience litigating whistleblower and employment cases and also litigating claims arising under the FOIA and Privacy Acts I can attest that FOIA litigation is complex civil litigation." *Id*. ¶ 16.[4]

CREW also submits for the Court's consideration the 2007 Declaration of Steven K. Davidson ("Davidson Decl."), a partner at the law firm of Steptoe & Johnson who provided his expert opinion concerning then-current market rates to this Court in *United States, ex rel. Miller v. Bill Harbert Int'l Construction, Inc.*, Civil Action No. 95-1231 (D.D.C.) (filed herewith as Exhibit B). Mr. Davidson testified that the hourly rates being sought by attorneys at the WilmerHale firm were "comparable to the prevailing market rates" and "within the bounds of what is customary in the Washington, D.C. marketplace." Davidson Decl. ¶¶ 16–17. Notably, in reaching that conclusion, Mr. Davidson relied upon his "years of experience in the management of [his] own firm in setting rates [which put him] in a position to be aware of rates generally in the market." *Id*. ¶ 16. He noted, *inter alia*, that based upon survey data, the WilmerHale rates were "well within the range reported for other large firms with offices in the District of Columbia," *id*. ¶ 19, and were comparable to the rates established by the LSI-derived *Laffey*

---

[4] The fee structure employed by Mr. Colapinto's firm is more granular than the *Laffey* matrix, establishing different rates for attorneys with experience levels of 20–24 years, 25–29 years, and 30 or more years, as opposed to the highest level of 20 or more years under *Laffey*. *See id.*, ¶ 10. Under his firm's structure, CREW's counsel, Ms. Weismann and Mr. Sobel, would have current rates of $995.00/hour. CREW here seeks only the lower rate, based upon the highest *Laffey* experience level (20+ years), as previously awarded to counsel, *see, e.g.*, *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 2014 U.S. Dist. LEXIS 182098 (D.D.C. Aug. 4, 2014) (Ms. Weismann and Mr. Sobel sought, and were awarded, LSI-derived *Laffey* rate of $771.00/hour for work performed in 2013).

matrix, *id*. ¶¶ 20–21.  The rates sought by WilmerHale, in 2007, ranged from $625 to $750 per hour for attorneys with experience levels similar to that of Ms. Weismann and Mr. Sobel (bar admissions in 1978, 1980 and 1985, compared with Ms. Weismann's admission in 1979 and Mr. Sobel's in 1980).  *Id*. ¶ 21.[5]  In this case, for work performed between 2012 and 2015, CREW seeks rates of $753, $771 and $789 for counsel's time.

      CREW also submits the 2012 Declaration of Nathan Lewin ("Lewin Decl."), a partner at the law firm of Lewin & Lewin who provided his expert opinion concerning market rates for complex federal litigation to this Court in *DL v. District of Columbia*, Civil Action No. 05-1437 (D.D.C.) (filed herewith as Exhibit C).  Mr. Lewin engaged in "complex federal litigation in the Washington, D.C. legal market place" throughout his career as a private attorney, which began in 1969.  Lewin Decl. ¶¶ 2–3.  His hourly rates, and those of his law firm, were among those included in the fee matrix that formed the basis of the original *Laffey* matrix.  *Id*. ¶ 4.  Mr. Lewin testified that "[i]n [his] experience, the rates of all firms in the complex federal litigation marketplace are comparable," and that both his former and then-current law firms "viewed all firms engaged in complex federal litigation in Washington, D.C., as its competitors in that marketplace."  *Id*. ¶¶ 5, 6 & 8.  In 2001, Mr. Lewin's hourly rate for complex federal litigation was $500 per hour, and in 2002 it was raised to $550 per hour.  *Id*. ¶ 8.  In comparison, the LSI-derived rate for 2001, for a senior attorney, ranged between $468 and $487; for 2002, the rates ranged between $487 and $522.  Mr. Lewin testified that his then-current hourly rate (in March 2012) was $750 per hour.  *Id*. ¶ 12.  The LSI-derived rate for a senior attorney at that time was $734.  Significantly, Mr. Lewin noted that, "in order to be competitive in the marketplace for complex federal litigation," his law firms "set [their] hourly rates in a manner that included

---

[5] The LSI-derived rates for 2007 ranged from $614 to $645 per hour.

7

consideration of our competitors' rates regardless of the size of the competitor." *Id*. ¶¶ 6 & 8.

Other evidence, in addition to the proffered declarations, supports the hourly rates established in the LSI-derived fee matrix.  Three times a year, Westlaw CourtExpress compiles a report based upon fee applications filed in bankruptcy cases by firms located in 12 regions across the United States, including the District of Columbia.  *See* Exhibit D, filed herewith.  These reports list, *inter alia*, the law school graduation year, rates billed for attorneys practicing in the District of Columbia that are covered by the fee applications, and the time period covered by the fee applications.  *Id*.  Filed herewith as Exhibits E and F are excerpts of the *Westlaw CourtExpress Legal Billing Reports* that apply to the District of Columbia for May and August 2012.  While the reported hourly rates are derived from bankruptcy cases, the bankruptcy court for this district has recognized that *Laffey* rates are applicable to "complex federal litigation" and noted that "*Laffey*'s rates have been approved for use in District of Columbia bankruptcy cases." *In re B & W Mgmt., Inc*., 63 B.R. 395, 406–07 (Bankr. D.D.C. 1986) (citation omitted).  The May 2012 billing report identifies 17 attorneys who, at the time, had 20 or more years of experience.  Their hourly rates ranged from $995 per hour to $307 per hour, with an average $777.  Exhibit E.  The August 2012 report identifies 36 attorneys who had 20 or more years of experience.  Their hourly rates ranged from $1,090 per hour to $455 per hour, with an average $752. Exhibit F.  The average hourly rates are remarkably similar to the applicable LSI-derived rates for that time period, which range between $734 and $753.

As additional evidence of market rates in the District of Columbia, CREW files herewith as Exhibit G relevant excerpts from the *Real Rates Report 2014*, which is based upon "anonymized data showing the actual hours and fees law firm personnel billed." *Id*. at viii.  The publication shows that, in 2013, based upon a sample of 1,022 attorneys, the median rate for

8

partners engaged in litigation was $660 per hour, and the "third quartile" was $765 per hour. *Id*. at 75. The report also provides additional granularity with respect to rates for partners in the District of Columbia, distinguishing between those with less than 21 years of experience, and those with more. For attorneys (like counsel here) with more than 21 years of experience, the median rate in 2013 (based upon a sample of 1,098 attorneys) was $706 per hour, and the "third quartile" was $812 per hour. *Id*. at 88.[6]

When taken together, the declarations of Mr. Colapinto, Mr. Davidson and Mr. Lewin, and the actual billing practices of District of Columbia law firms as established in the *Westlaw CourtExpress Legal Billing Reports* and the *Real Rates Report*, make clear that the LSI-derived *Laffey* matrix, which calculates rates for senior attorneys at more than $700 per hour, is a more accurate measure of market rates for complex federal litigation in this jurisdiction than the USAO matrix, which sets those rates at approximately $500 per hour.[7]

Finally, on remand, CREW urges the Court to reconsider its earlier conclusion that the market rates established in the LSI-adjusted matrix should be reduced by fifteen percent to "account for the differences between reported rates and actual law firm billing realization." 80 F. Supp. 3d at 5. The Court cited a *National Law Journal* article in support of the following conclusion:

---

[6] The LSI-derived rates for 2013 ranged from $753 to $771. The "third quartile" figures in the *Real Rates Report* are likely the more accurate benchmarks for complex litigation.

[7] As the Court has noted, DOJ's expert, Dr. Laura Malowane, testified in an earlier case "that an hourly billing rate of approximately $700 for a partner at a large Washington, D.C. firm was 'well within' prevailing rates at similar-sized firms in comparable locations." 80 F. Supp. 3d at 4 (citation omitted). Dr. Malowane's earlier declaration was filed with CREW's reply in support of its fee motion as Exhibit A (Dkt. No. 62-1) and provides additional record evidence demonstrating that the LSI-derived matrix accurately reflects prevailing market rates.

> Surveys of "standard" billing rates . . . overlook the fact that clients rarely pay those rates. Firms frequently discount their standard rates and, even after discounting, lower the effective rate further by writing off a portion of their billed hours to reflect attorney inefficiency and other considerations. Finally, firms do not always collect 100 percent of the fees they ultimately bill. For these reasons, reported rates surely overstate the actual fees that law firms are paid—and expect to be paid—for their services.

*Id*. (citation omitted). The evidence submitted herewith contradicts that assumption.

Mr. Colapinto states that "[c]lients who have the means to pay [his] firm's standard market rates are required to pay those fees, and they do, in fact, pay those fees." Exhibit A, ¶ 12. The *Real Rates Report 2014* is based upon "fees *paid* by 90 companies to more than 5,600 law firms and more than 206,000 timekeepers. . . . The information is not based on surveys, sampling, or reviews of other published information but on anonymized data showing the *actual* hours and fees law firm personnel billed." Exhibit G at viii (emphasis added). Given that the "third quartile" rate reflected in the report was $812 per hour, compared with LSI-derived rates ranging from $753 to $771 for the same time period, CREW submits that a fifteen percent reduction of the LSI-derived rates would result in compensation below the prevailing market rate for complex federal litigation in the District of Columbia.

## Conclusion

For the foregoing reasons, the Court should apply the full LSI-derived market rates in this case and order defendant DOJ to pay CREW attorneys' fees in the amount of $43,310[8] and costs in the amount of $350, for a total of $43,660.

---

[8] In addition to the fees of $40,786 accounted for in CREW's opening brief and its reply brief, CREW seeks additional fees incurred in the preparation of this supplemental memorandum: $2,524 for Mr. Sobel (3.2 hours @ $789). *See* Second Supplemental Declaration of David L. Sobel, filed herewith.

10

Respectfully submitted,

  */s/ David L. Sobel*
DAVID L. SOBEL, D.C. Bar No. 360418
5335 Wisconsin Avenue, N.W.
Suite 640
Washington, DC 20015
(202) 246-6180

ADAM J. RAPPAPORT, D.C. Bar No. 479866
Citizens for Responsibility and
    Ethics in Washington
455 Massachusetts Avenue, N.W., Floor 6
Washington, DC 20001
(202) 408-5565

 Counsel for Plaintiff