# EXHIBIT C

Supplemental Memorandum in Support of Plaintiff's
Motion for an Award of Attorneys' Fees and Costs

*Citizens for Ethics and Responsibility in Washington v. Dep't of Justice*,
Civ. No. 11-0374 (CRC)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**Plaintiffs' Exhibit 76**

DL,[1] et al., on behalf of themselves ) 
and all others similarly situated, )
)
              *Plaintiffs*, )
           v. )   Civil Action No. 05-1437 (RCL)
)
THE DISTRICT OF COLUMBIA, )
et al., )
              *Defendants*. )
_____ )

### AFFIDAVIT OF NATHAN LEWIN

I, Nathan Lewin, do hereby affirm and state:

1. I am a 1960 graduate of Harvard Law School. Following law school, I served as a law clerk to Chief Judge J. Edward Lumbard of the United States Court of Appeals for the Second Circuit (1960-1961) and then to Associate Justice John M. Harlan of the Supreme Court of the United States (1961-1962). Thereafter, I served as an Assistant to the Solicitor General in the Department of Justice under Solicitors General Archibald Cox and Thurgood Marshall. I also served as Deputy Assistant Attorney General in the Civil Rights Division of the Department of Justice and as Deputy Administrator of the Bureau of Security and Consular Affairs at the Department of State.

2. Upon leaving government service in 1969, I became a founding partner of Miller, Cassidy, Larroca and Lewin ("Miller Cassidy"), which was one of the nation's foremost litigation "boutiques" for more than 30 years. In January 2001, when Miller Cassidy merged with the Washington office of Baker Botts, LLP, I did not participate in the merger. For a brief period,

---

[1] Pursuant to Local Rule 5.4(f)(2), minors are identified by their initials.

I joined the Washington office of Mintz Levin Cohn Ferris Glovsky and Popeo, PC. In May 2002, I formed Lewin & Lewin, LLP, in Washington, D.C. Lewin & Lewin, LLP, engages in complex federal litigation.

3. Throughout my career, I have engaged in complex federal litigation in the Washington, D.C., legal marketplace and in many other jurisdictions around the country.

4. Miller Cassidy was one of the firms whose rates information was included in the fee matrix created to support the 1983 fee application in *Laffey v. Northwest Airlines,* 572 F. Supp. 354 (D.D.C. 1983), *rev'd,* 746 F.2d 4 (D.C. Cir. 1984), *overruled on other grounds, Save Our Cumberland Mountains v. Hodel,* 857 F.2d 1516, 1525 (D.C. Cir. 1988) (*en banc*). That matrix has come to be known as the "*Laffey* matrix." As can be seen, my hourly rate of $250 is among the highest rates in the data underlying the *Laffey* matrix. Only partners at Caplin & Drysdale had a higher rate ($300) and senior partners at Dickstein, Shapiro & Morin also had a rate of $250. By comparison, Daniel A. Rezneck then of Arnold & Porter, who compiled the data and created the *Laffey* matrix, had an hourly rate of $200.

5. In *Heller v. District of Columbia,* No. 03-213, 2011 WL 6826278 at *9 (D.D.C. Dec. 29, 2011), *appeals docketed,* Nos. 12-7021, 12-7022 (D.C. Cir. Feb. 23, 2012), the court assumes from the Malowane Declaration that the hourly rates of large firms engaged in complex federal litigation are higher than those of small or boutique firms engaged in such practice. In my experience, the rates of all firms in the complex federal litigation marketplace are comparable. It is my experience that law firms, like other businesses, must respond to the whole market, not just a segment.

6. Throughout my tenure at Miller Cassidy, the firm viewed all firms engaged in complex federal litigation in Washington, D.C., as its competitors in that marketplace. This

2

includes both other boutique firms and large firms. In no way did Miller Cassidy consider itself to be in competition with only small or boutique firms. In order to be competitive in the marketplace for complex federal litigation, Miller Cassidy set its hourly rates in a manner that included consideration of our competitors' rates regardless of size of the competitor.

    7. The overhead of Miller Cassidy was of little or no consideration in the setting of hourly rates.

    8. In 2001, when I left Miller Cassidy, my hourly rate for complex federal litigation was $500. When I started Lewin & Lewin, LLP, I adjusted my Miller Cassidy rate upward to $550 to reflect a general increase in rates.

    9. Lewin & Lewin, LLP, views all firms engaged in complex federal litigation in Washington, D.C., as its competitors in that marketplace. This includes other boutique firms and large firms. Lewin & Lewin, LLP, does not consider itself to be in competition with only small or boutique firms. In order to be competitive in the marketplace for complex federal litigation, Lewin & Lewin, LLP, sets its competitive hourly rates regardless of the size of the competitor.

    10. The overhead of Lewin & Lewin, LLP, is of little or no consideration in the setting of hourly rates.

    11. In the *Heller* case, the Malowane Declaration assumed that smaller firms had lower overhead than large firms. Based on my experience at Miller Cassidy, a 35-attorney firm, and at Lewin & Lewin, LLP, a 2-attorney firm, the smaller the firm the greater the overhead on a per-attorney basis.

    12. Today, my hourly rate for complex federal litigation is $750.

    13. Except for cases in which my hourly rate was adjusted to reflect the fact that the litigation was undertaken on a partial *pro bono* basis, the firms with which I have been

Case 1:05-cv-01437-RCL   Document 326-36   Filed 04/30/12   Page 4 of 4

associated charged the same hourly rate for all work performed by me on a matter. The hourly rate did not change to reflect the simplicity or complexity of the particular task involved.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date:  March 14, 2012

_____
NATHAN LEWIN

4